IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF HAWAII

_____
                                )
TOBY SIDLO, on behalf of himself, )
and all others similarly situated, )
                                )
          Plaintiff(s),         )
                                )
vs.                             ) Civ. No. 15-00269 ACK-KSC
                                ) [CONSOLIDATED]
KAISER PERMANENTE INSURANCE     )
COMPANY, a California non-profit )
corporation, KAISER FOUNDATION  )
HEALTH PLAN, INC., a foreign non- )
profit corporation, and DOE     )
DEFENDANTS 1-50,                )
                                )
          Defendants.           )
_____)
                                )
KAISER FOUNDATION HEALTH PLAN,  )
INC., a foreign non-profit      )
corporation,                    )
                                )
          Plaintiff,            )
                                )
vs.                             )
                                )
HAWAII LIFE FLIGHT CORPORATION, a )
Hawaii corporation, and AIR     )
MEDICAL RESOURCE GROUP, INC., a )
Utah Corporation,               )
                                )
          Defendants.           )
_____)
                                )
HAWAII LIFE FLIGHT CORPORATION, a )
Hawaii corporation,             )
                                )
          Counterclaim Plaintiff, )
                                )
vs.                             )
                                )
KAISER FOUNDATION HEALTH PLAN,  )
INC., a foreign non-profit      )
corporation,                    )

```
                                          )
                Counterclaim Defendant.   )
_____ )
```

**ORDER DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT, GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT, GRANTING IN PART AND DENYING IN PART DEFENDANTS' SUPPLEMENTAL MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT, AND SUA SPONTE DISMISSING COUNT VI WITHOUT PREJUDICE**

For the reasons set forth below, the Court DENIES Plaintiff Toby Sidlo's Motion for Partial Summary Judgment Against Defendant Kaiser Foundation Health Plan, Inc., ECF No. 284; GRANTS Defendant Kaiser Foundation Health Plan, Inc.'s Motion for Summary Judgment, or in the Alternative, Partial Summary Judgment, ECF No. 324; GRANTS in part and DENIES in part Defendants Kaiser Foundation Health Plan, Inc. and Kaiser Permanente Insurance Company's Supplemental Motion for Summary Judgment, or in the Alternative, Partial Summary Judgment, ECF No. 285; and *sua sponte* DISMISSES Count VI without prejudice.

**PROCEDURAL BACKGROUND**

**I.   Complaint and First Amended Complaint**

On July 15, 2015, Plaintiff Toby Sidlo ("Plaintiff" or "Sidlo"), on behalf of himself and all others similarly situated, filed a class action complaint against Kaiser Permanente Insurance Company ("KPIC") and Kaiser Foundation Health Plan, Inc. ("KFHP," and together with KPIC, "Defendants").  Pl. Toby Sidlo's Class Action Compl.

("Complaint"), ECF No. 1.  Sidlo alleges claims against

Defendants under the Employee Retirement Income Security Act of

1974 ("ERISA"), 29 U.S.C. § 1001 et seq.  Id. ¶ 2.  The

Complaint raises two counts against Defendants:  Count I, which

arises under 29 U.S.C. § 1132(a)(1)(B), seeks to recover health

care benefits, as well as an injunction "clarify[ing] and

enforc[ing] [Plaintiff's and the class members'] rights to

payment of those amounts still due and owing"; and Count II,

arising under 29 U.S.C. § 1132(a)(3), seeks equitable relief to

enjoin Defendants "from denying full coverage based on

artificially lowered reimbursement rates" and other appropriate

relief.  Id. ¶¶ 88-107.

      On June 9, 2016, Sidlo filed a motion requesting leave

to amend his Complaint.  ECF No. 201.  Nonparties Hawaii Life

Flight Corporation ("HLF") and Air Medical Resource Group, Inc.

("AMRG") filed a joinder to Sidlo's motion on June 17, 2016.[1]

ECF No. 216.  On June 22, 2016, the Court granted Sidlo's motion

to file an amended complaint, ECF No. 226, and on June 23, 2016,

---

[1] HLF and AMRG failed to cite any authority pursuant to which
they filed their joinder.  Local Rule 7.9 permits a party to
file a "joinder of simple agreement," as is the case here, "at
any time."  While HLF and AMRG are not parties to this action,
they are defendants in Kaiser Foundation Health Plan, Inc. v.
Hawaii Life Flight Corp., et al., Civ. No. 16-00073 ACK-KSC,
which has been consolidated with the instant case for purposes
of discovery.  See Order Consolidating Cases, ECF No. 85.
Accordingly, the Court has permitted the filing of such joinders
by nonparties HLF and AMRG.

Sidlo filed a First Amended Class Action Complaint ("FAC"), ECF No. 227.

In addition to Counts I and II,[2] the FAC alleges four other claims: (1) Count III, arising under 29 U.S.C. § 1022 and § 1132(a), seeks full legal and equitable relief, including injunctive relief, in connection with KFHP's alleged failure to timely issue Plaintiff and the class a summary of material modifications ("SMM") of members' plans' coverage terms; (2) Count IV, arising under 29 U.S.C. § 1132(a), seeks full legal and equitable relief, including injunctive relief, in connection with Defendants' alleged breach of fiduciary duty; (3) Count V, arising under 29 U.S.C. § 1132(a), seeks to equitably estop Defendants "from denying that they are responsible for the copay liability and all sums owed by the Plaintiff and the class to their provider"; and (4) Count VI, arising under 29 U.S.C. § 1132(a), seeks a determination that Defendants "are liable for the full unpaid balances owed by each class member under the doctrine of equitable indemnification as well as all other indemnity requirements imposed by law." FAC ¶¶ 127-149.

## II.    The **KFHP v. HLF** Litigation

On February 18, 2016, KFHP filed a complaint in Kaiser Foundation Health Plan, Inc. v. Hawaii Life Flight Corp., et

---

[2] In the FAC, Sidlo asserts Counts I and II solely against KFHP.

al., Civ. No. 16-00073 ACK-KSC.   D. Haw., Civ. No. 16-00073 ACK-KSC, ECF No. 1 ("KFHP Complaint").   In the KFHP Complaint, KFHP alleges that HLF and AMRG violated an anti-assignment provision in KFHP's ERISA plans within Hawaii.   Id. ¶¶ 9, 13, 54.   HLF provides medical air transportation services in Hawaii.   HLF Answer ¶ 19.   AMRG shares certain corporate officers with HLF and holds a FAA Part 135 Certificate, under which certain aircraft operate.   Id. ¶¶ 7-8.   HLF is one of at least nine medical transportation companies affiliated with AMRG.   Ex. Q to KFHP's Motion at 36:5-37:22.

KFHP alleges that HLF and/or AMRG "have repeatedly attempted to procure broad assignments of members of the Plans' rights, interest, claims for money due, benefits and/or obligations under the Plans, in violation of the anti-assignment provision."   KFHP Complaint ¶ 33.   More specifically, KFHP asserts that the Sidlo litigation has been brought by HLF and/or AMRG in Sidlo's name, which constitutes a violation of the anti-assignment provision.   Id. ¶ 35.   On April 6, 2016, this Court consolidated the Kaiser and Sidlo cases for purposes of discovery.   Order Consolidating Cases, ECF No. 85.

On April 14, 2016, HLF and AMRG filed an answer to KFHP's Complaint ("HLF Answer"), ECF No. 102, and HLF further filed a counterclaim against KFHP ("HLF Counterclaim"), ECF No. 103.   HLF alleges counts of (1) unfair competition in violation

of Hawaii Revised Statutes ("HRS") § 480-2; (2) tortious interference with contract; (3) defamation; and (4) trade libel/disparagement.  HLF Counterclaim ¶¶ 23-49.  HLF asserts that KFHP, "in connection with its health insurance services, has made written and oral demands that hospitals arrange for emergency transportation of patients exclusively through or as designated by KFHP, even where those hospitals have contracts with HLF and contrary to the federal law that exclusively provides that emergency patient transport is arranged by the treating physician."  Id. ¶ 24.  Further, HLF contends that KFHP has sent letters to patients that received air ambulance services from HLF, which letters contain "numerous falsehoods, misrepresentations, and otherwise disparaging and defamatory statements" regarding HLF.  Id. ¶ 25.

### III.   Motions for Summary Judgment

On May 16, 2016, Sidlo filed a Motion for Partial Summary Judgment Against Defendant KFHP requesting this Court to grant summary judgment to him on Count I of his original Complaint.  ECF No. 151.  That same day, Defendants filed their Motion for Summary Judgment, or in the Alternative, Partial Summary Judgment, seeking summary judgment on both Counts I and II.  ECF No. 149.  HLF and AMRG filed a joinder to Sidlo's partial summary judgment motion on May 27, 2016.  ECF No. 168.

The Court set a hearing on the motions for June 20, 2016.  However, as noted above, Sidlo filed a motion to amend his Complaint on June 9, 2016, alleging four additional counts.  Because these additional counts involved issues subject to the summary judgment motions, the Court vacated the June 20, 2016 hearing and permitted the parties to file "supplemental motions for partial summary judgment as to any of the additional claims asserted in the FAC."  ECF No. 226 at 3.

On August 11, 2016, Defendants filed a Supplemental Motion for Summary Judgment, or in the Alternative, Partial Summary Judgment; a Memorandum in Support of Motion ("Defendants' Motion"), ECF No. 285-1; and a Concise Statement of Facts in Support of Defendants' Motion ("Defs.' CSF"), ECF No. 287.  Defendants' Motion seeks summary judgment on each of the four additional counts Sidlo alleged in the FAC.

That same day, Sidlo withdrew his previous partial summary judgment motion and filed a new Motion for Partial Summary Judgment Against Defendant KFHP; a Memorandum in Support of Motion ("Sidlo's Motion"), ECF No. 284-1; and a Concise Statement of Facts in Support of Sidlo's Motion ("Sidlo's CSF"), ECF No. 286.  Sidlo's Motion seeks summary judgment as to Count I.  As a result, on August 16, 2016, KFHP filed an *ex parte* application to strike Sidlo's Motion.  ECF No. 293.  KFHP argued that by re-filing his motion as to Count I, Sidlo had violated

the Court's Order permitting the parties to file supplemental briefs solely as to the additional claims asserted in the FAC. Id. at 2.  Among other things, KFHP argued that Sidlo's actions unduly prejudiced KFHP, which could have likewise filed a new summary judgment motion as to the original counts with the benefit of having learned Sidlo's position through prior briefing for the old motions, as well as having obtained a new expert report and additional discovery subsequent to its original summary judgment motion.  Id. at 4.

Rather than striking Sidlo's Motion, however, the Court allowed Sidlo to proceed on his new motion and granted leave to Defendants to file a new summary judgment motion as to Counts I and II, which would serve to replace their previous motion as to Counts I and II.  ECF No. 302 at 2-3.  Accordingly, on August 30, 2016, Defendant KFHP filed a Motion for Summary Judgment, or in the Alternative, Partial Summary Judgment; a Memorandum in Support of Motion ("KFHP's Motion"), ECF No. 324-1; and a Concise Statement of Facts in Support of KFHP's Motion ("KFHP's CSF"), ECF No. 325.  KFHP's Motion seeks summary judgment as to Counts I and II.

In sum, the Court has before it three motions that seek summary judgment as to the counts alleged in the FAC. Sidlo's Motion, which seeks summary judgment as to Count I, argues that KFHP breached the terms of Sidlo's and other

members' healthcare plans and asks this Court to order

Defendants to pay Sidlo's healthcare benefits under ERISA

§ 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B).  Sidlo's Motion at 1.

On August 30, 2016, Defendant KFHP filed a Memorandum in

Opposition to Sidlo's Motion ("KFHP's Opposition").  ECF 326.

Sidlo filed a Reply Memorandum in Support of Sidlo's Motion

("Sidlo's Reply") on September 5, 2016.  ECF No. 345.  Non-

parties HLF and AMRG filed a joinder to Sidlo's Motion on

September 9, 2016.  ECF No. 363.

        KFHP's Motion argues that because Sidlo bases his

arguments on an inapplicable plan term, KFHP is entitled to

summary judgment on Counts I and II.  KFHP's Motion at 2.  KFHP

also asserts that Sidlo lacks standing to bring his claim.  Id.

Separately, KFHP argues that the equities of this case demand

that summary judgment be granted in favor of Defendants.  Id.

On September 5, 2016, Sidlo filed a Memorandum in Opposition to

KFHP's Motion ("Sidlo's Opposition to KFHP's Motion"), ECF No.

341.  KFHP filed a Reply in Support of KFHP's Motion ("KFHP's

Reply") on September 9, 2016.  ECF No. 361.  That same day, non-

parties HLF and AMRG filed a joinder to Sidlo's Opposition to

KFHP's Motion.  ECF No. 365.

        Finally, Defendants KFHP and KPIC's Motion advances

various arguments as to why Defendants are entitled to summary

judgment on Counts III through VI, which seek relief under 29

U.S.C. § 1022 and § 1132(a).  Defendants again argue that Sidlo

lacks standing to bring this case and further contend that

"there is nothing equitable about any cause of action that seeks

to impose on KFHP and its members HLF's air transport costs that

dwarf any measure of fair market value."  Defendants' Motion at

2.  On August 25, 2016, Sidlo filed an Opposition to Defendants'

Motion ("Sidlo's Opposition to Defendants' Motion").  ECF No.

315.  Defendants filed a Reply Memorandum in Support of

Defendants' Motion ("Defendants' Reply") on September 1, 2016.[3]

ECF No. 335.  Non-parties HLF and AMRG filed a joinder to

Sidlo's Opposition to Defendants' Motion on September 9, 2016.

ECF No. 364.

---

[3] On September 8, 2016, HLF filed an *Ex Parte* Motion for Leave to
File HLF's Limited Response to Factual Assertions Made by KFHP
on Summary Judgment ("HLF's *Ex Parte* Motion").  ECF No. 355.  In
its *Ex Parte* Motion, HLF sought the Court's leave to file a
response to certain of Defendants' assertions that HLF contended
were "incorrect," "impertinent," "scandalous," or "inconsistent
with the record."  Id. at 1-2.  Attached to the *Ex Parte* Motion
as an exhibit was HLF's proposed response.

Because HLF's proposed response supplemented Sidlo's
extensive summary judgment briefing, the Court construed HLF's
filing as a substantive joinder.  The Court found that HLF was
well beyond the seven days within which it was required to file
a substantive joinder pursuant to Local Rule 7.9.  Local Rule
7.9 ("Except with leave of court based on good cause, any
substantive joinder in a motion or opposition must be filed and
served within seven (7) days of the filing of the motion or
opposition joined in.").  The Court further declined to find
good cause to grant HLF's *Ex Parte* Motion, and therefore denied
the same.

The Court held a hearing regarding the various motions on September 15, 2016.

## FACTUAL BACKGROUND

Sidlo and the proposed class members are participants in or beneficiaries of employee welfare benefit plans governed by ERISA.  FAC ¶¶ 3, 11; KFHP's Motion at 7.  At all relevant times, Sidlo was enrolled in a plan provided by his employer (the "Group") and administered in part by Defendant KFHP.  KFHP's Motion at 7; KFHP's CSF ¶ 1.  The plan documents consist of a Group Face Sheet, Group Medical and Hospital Service Agreement ("Service Agreement"), Kaiser Permanente Group Plan Benefit Schedule ("Benefit Schedule"), a Member Guide, and various riders and amendments.  KFHP's CSF ¶ 2; Sidlo's CSF ¶ 9.

Sidlo alleges that Defendants have violated ERISA by underpaying or under-reimbursing claims for medical air transportation services provided to plan participants or beneficiaries by HLF since 2013.  FAC ¶¶ 55-56.  Sidlo alleges that in his case, this has left him with a balance of $36,377.32 due to HLF.  Sidlo's Motion at 9.

## I.  Medical Air Transport in Hawaii

KFHP asserts that prior to 2010, it had contracts with Hawaii Air Ambulance and Air Med Hawaii to provide medical air transportation services to members.  Decl. of Thomas Risse ¶ 2, ECF No. 287-1.  Eventually, through a series of consolidations

and mergers, "HLF became the sole provider of air ambulance services in Hawaii." Id. According to KFHP, "[i]nter-facility air transportation . . . is a common form of medical transportation within Hawaii because appropriate medical services are sometimes unavailable on other islands." KFHP's Motion at 5.

## II. KFHP's Contract with HLF

Until around August or September 2013, KFHP and HLF "had some form of contractual relationship concerning reimbursement rates." Sidlo's Opposition to KFHP's Motion at 4; KFHP's Motion at 6. Pursuant to that contract, HLF accepted as payment in full an average rate from KFHP that was less than the total billed rate HLF charged for a transport. KFHP's Motion at 6; see also Pl.'s Opp'n to Defs.' CSF ¶ 6 ("Admit that KFHP paid HLF under a negotiated contractual rate through September 2013."). KFHP asserts that under the parties' contract, HLF accepted an average of $10,638 per transport, which was roughly 158% of the applicable Medicare rate. KFHP's Motion at 6.

However, due to its growing concerns with HLF's increasing rates, in September 2013, KFHP entered into a contract with American Medical Response ("AMR"), another medical transportation company that had moved into the Hawaii market that year. Id. at 5-6. KFHP contends that when this happened, "HLF retaliated by terminating its contract [with KFHP] and

increasing its billed charges to KFHP by nearly 40% to $57,017 per transport." KFHP's Motion at 6. Sidlo, on the other hand, contends that it was KFHP that "calculatingly avoided . . . entering into a renewed contract with HLF, so it could assist another provider, AMR, get up and running as a competitor largely under [KFHP's] control." Sidlo's Opposition to KFHP's Motion at 4.

Now that KFHP and HLF no longer have a contract, KFHP pays HLF 200% of the applicable Medicare rate, which averages out to $13,803 per transport. KFHP's Motion at 6. KFHP asserts that this figure is more than what KFHP used to pay HLF pursuant to the parties' contract, and "higher than what HLF routinely accepts from other payors for the same services." Id. Sidlo denies that the 200% of Medicare rate is reasonable. Pl.'s Opp'n to Defs.' CSF ¶ 6.

### III. Sidlo's Medical Air Transport and Ensuing Communications with KFHP and HLF

On July 17, 2014, Sidlo was involved in an accident on Kauai that left him with serious burn injuries over large portions of his body. Sidlo's Motion at 4-5; KFHP's Motion at 10. After driving himself to Kauai Veteran's Memorial Hospital, Sidlo was later transported by HLF to a burn center on Oahu that could properly treat his injuries. Sidlo's Motion at 5; KFHP's Motion at 10; Ex. O to Decl. of Michelle Scannell at 73:20-22,

ECF No. 325-24.  HLF billed KFHP $49,320.54 for Sidlo's flight. KFHP's CSF ¶ 15.

In October and November 2014, HLF sent notices to Sidlo informing him that HLF had forwarded a claim to KFHP on Sidlo's behalf for the medical air transportation services Sidlo had received on July 17, 2014.  See Ex. S to Decl. of Michelle Scannell, ECF No. 325-28.  A letter from HLF to Sidlo dated November 7, 2014 states, "You are receiving this letter because Kaiser Permanente is refusing to complete processing of your claim which leaves you with a large balance.  We strongly suggest contacting Kaiser Permanente immediately to dispute their determination.  We are also writing to advise we are sending your account along with several others to an attorney on the main land [sic] to help us seek proper reimbursement for our services."  Id.

KFHP thereafter sent a letter to Sidlo on December 15, 2014, directing Sidlo not to respond to any of HLF's requests for payment and not to pay any bills from HLF.  Ex. A to Decl. of Ingrid Mealer, ECF No. 325-2.  The letter stated, "[KFHP is] currently in negotiations with [HLF] and recently learned that it was asking members like you to pay amounts above what we believe are reasonably . . . owed to them."  Id.  KFHP indicated in its letter that it planned to pay HLF $12,943.22 for Sidlo's flight, which it contended was twice the Medicare rate and what

- 14 -

KFHP felt to be "reasonable and customary for this type of service." Id. The letter further stated that KFHP would protect Sidlo against "any claim that [HLF] has made or may make against [Sidlo] for the balance of its bill." Id.

On December 24, 2014, KFHP issued an Explanation of Benefits ("EOB") to Sidlo through Employers Mutual, Inc. ("EMI"), KFHP's third party claims administrator for transportation claims. Ex. 5 to Decl. of Toby Sidlo, ECF No. 286-9; see also KFHP's CSF ¶ 27. The EOB lists Sidlo's transport charges and indicates that Sidlo owed nothing. Ex. 5 to Decl. of Toby Sidlo. The upper right-hand corner of the EOB includes text that states, "GROUP NAME: KP/HAWAII COMMERCIAL 20% COPAY." Id. A Statement of Remittance dated December 24, 2014 indicates that KFHP paid HLF $12,943.22, plus interest. Ex. Z to Decl. of Michelle Scannell, ECF No. 325-35. Subsequent to KFHP's payment to HLF, Sidlo continued to receive statements and letters from HLF indicating an outstanding balance of $36,377.32. See Ex. 6 to Decl. of Toby Sidlo, ECF No. 286-10; Ex. S to Decl. of Michelle Scannell.

Later, on April 17, 2015, HLF sent a letter to EMI requesting documents related to Sidlo's claim, "[i]n order to more effectively assist in resolving this matter, and to comply with [HLF's] agreement with [Sidlo] to submit this claim/appeal." Ex. 8 to Decl. of Toby Sidlo, ECF No. 286-12.

In the letter, HLF states, "Your insured is asserting that [the] amount paid is unreasonably low, that the amount paid is contrary to the terms in the plan/policy/certificate and that the Affordable Care Act requires that rates be paid according to Usual, Customary, and Reasonable [sic] . . . as opposed to basing the allowable [sic] on the Medicare fee schedule." Id. HLF also asserts that "air-ambulance providers are 'air carriers' . . . and that air carrier rates are set by market forces/market conditions . . . ." Id. Sidlo characterizes this letter as an ERISA appeal, see Sidlo's CSF ¶ 26, while KFHP characterizes it as a simple document request, see KFHP's Motion at 14-15. Additionally, Sidlo states that there was no response to his letter. Sidlo's Motion at 6. KFHP contends that this was due to HLF and Sidlo's decision to "disengage from any dialogue with KFHP and instead to take legal action." KFHP's Motion at 15.

On May 4, 2015, KFHP sent a letter to Sidlo offering to provide him with legal representation in order to protect him from any of HLF's efforts to collect the balance of the bill for his air ambulance services. Ex. U to Decl. of Michelle Scannell, ECF No. 325-30. The letter states, "Kaiser will pay all of [the attorney's] legal fees and expenses. You should expect to receive a letter from the law firm . . . regarding its representation of you." Id.

- 16 -

On May 15, 2015, HLF wrote a letter to Sidlo stating that KFHP was required to pay 80% of the actual billed charge for Sidlo's air ambulance services, per Sidlo's health plan. Ex. T to Decl. of Michelle Scannell, ECF No. 325-29.  HLF stated that KFHP was liable for an additional $26,483.21, but that KFHP had "deemed this amount as [Sidlo's] responsibility." Id.  KFHP contends that this was a misrepresentation.  KFHP's Motion at 12.

## IV.  Sidlo's Complaint with the Insurance Commissioner

In a letter dated May 22, 2015, Sidlo, through HLF, filed a complaint with the Hawaii Insurance Commissioner ("Insurance Commissioner"), requesting that the Commissioner review Sidlo's claim and require that KFHP pay the remaining $26,483.21 Sidlo claimed KFHP owed under his health plan. Sidlo's CSF ¶ 28; Ex. 10 to Decl. of Toby Sidlo, ECF No. 286-14. KFHP failed to respond to the complaint on time, though the Insurance Commissioner allowed KFHP to file a late response. See Ex. 11 to Decl. of Toby Sidlo, ECF No. 286-15.  Accordingly, KFHP responded to the Insurance Commissioner on July 30, 2015, asserting that it was "taking every step to address the situation in a manner that will serve the interests of both its Members and the larger public."  Ex. 12 to Decl. of Toby Sidlo, ECF No. 286-16.  KFHP also wrote that it would "indemnify all

impacted Members from HLF's baseless claims (beyond the costs of their co-pays)." Id. (emphasis in original).

On August 6, 2015, the Insurance Commissioner wrote to Sidlo, forwarding KFHP's response and asking Sidlo to advise the Insurance Commissioner as to his position in light of the response. Ex. BB to Decl. of Michelle Scannell, ECF No. 325-37. The letter states, "In the event we do not hear from you by September 7, 2015, we will presume that this matter has been resolved to your satisfaction and this file will be closed and no further action taken." Id. Sidlo did not respond to the Insurance Commissioner, presumably because he had filed the instant lawsuit on July 15, 2015. See Ex. AA to Decl. of Michelle Scannell at 120:10-19, ECF No. 325-36.

### V. Sidlo's Plan Documents

As noted above, Sidlo's health plan documents consist of a Group Face Sheet, Service Agreement, Benefit Schedule, a Member Guide, and various riders and amendments. KFHP's CSF ¶ 2; Sidlo's CSF ¶ 9. The Service Agreement lists KFHP as "a fiduciary to review claims under [the] Service Agreement," and indicates that KFHP "has the authority to review claims and determine whether a Member is entitled to the benefits of [the] Service Agreement." Ex. D. to Decl. of Cherie O'Connor at 4, ECF No. 325-7. The Benefit Schedule states that "[c]overage is limited to the medical services which are cost effective," and

that KFHP "shall have no responsibility for any other service a Member seeks or receives." Id. at 25.

Benefit Schedule § G (the "Ambulance Services provision"), entitled "Ambulance Services," states:

> [KFHP] will pay 80% of Applicable Charges for ground or air ambulance services received within or outside the Service Area when deemed medically necessary by a Physician. Ambulance service is medically necessary if use of any other means of transport, regardless of the availability of such other means, would result in death or serious impairment of the Member's health. Air ambulance must be for the purpose of transporting the Member to the nearest medical facility designated by [KFHP] for receipt of medically necessary acute care, and the Member's condition must require the services of an air ambulance for safe transport.

Id. at 28.  "Applicable Charges" is defined in the Service Agreement in relevant part as follows:

> (2)  For other medical services or items, Applicable Charges mean:
>
> (a)  [W]hen Kaiser Permanente provides medical services or items to a Member, then Member Rates are used,
>
> (b)  When medical services or items are not provided by Kaiser Permanente, then Applicable Charges mean the negotiated rate, or the actual billed charge.

Id. at 4.

Sidlo asserts that since November 2013, KFHP has refused to pay Sidlo's and other members' claims in accordance with this language.  Sidlo's Motion at 8.  KFHP, on the other hand, contends that medical transport is handled differently depending on whether the member is transported from the scene of an incident or between medical facilities.[4]  KFHP's Motion at 8. It argues that the Ambulance Services provision applies only to the former situation.  Id.  With respect to the latter, KFHP applies what it calls the "Inter-Facility Transport Policy," whereby KFHP "reimburses non-contracted providers of inter-facility transportation services (including air transportation) at fair market value with no copayment obligation on Members." Id. at 9.  KFHP maintains that this policy is contained in the claim handbook used by EMI, which states, "Co-payments apply for all medical transports unless listed below as an exception: Inpatient transferred to another facility for treatment not provided at the inpatient facility . . . . Member receives treatment at a non-Plan hospital[,] KPHI staff arrange transfer to a Plan or non-Plan hospital."  Ex. F to Decl. of Shari Ilalaole at 9, ECF No. 325-12.

_____

[4] The instant action involves only claims for payment or reimbursement of inter-facility flights.  See Transcript of Proceedings at 13, ECF No. 421 (MS. SLAUGHT:  "[T]he class itself at this point . . . [does] not include any 9-1-1 calls from an incident scene to a hospital.").

While the Inter-Facility Transport Policy is not
specifically listed in the Benefit Schedule, KFHP states that it
adopted the policy pursuant to § 10.F of the Service Agreement,
which reads, "[KFHP] may adopt reasonable policies, procedures,
rules and interpretations to promote orderly and efficient
implementation of this Service Agreement."  KFHP's Motion at 9;
Ex. D. to Decl. of Cherie O'Connor at 22.  KFHP contends that it
adopted the Inter-Facility Transport Policy "decades ago."
KFHP's Motion at 9; Decl. of Ellen Bassford ¶¶ 1-2, ECF No. 325-
8.  Pursuant to the Inter-Facility Transport Policy, KFHP
currently pays 200% of Medicare's maximum allowable charges for
inter-facility medical air transport by non-contracted providers
in Hawaii.  KFHP's Motion at 9; Decl. of Thomas Risse ¶ 2, ECF
No. 325-14.  According to KFHP, "[t]his rate is above the prior
contracted rate with HLF and is above the Medicare and the State
of Hawaii Department of Health Emergency Medical Services Branch
Rotary Wing and Mileage rates."  Id.; see also Exs. G, I to
Decl. of Thomas Risse, ECF Nos. 325-15, 325-17.

Next, a Member Guide that was given to Sidlo outlines
the standard appeals process for members whose claims are denied
coverage.  Ex. 3 to Decl. of Toby Sidlo at 33-34, ECF No. 286-6.
The guide indicates that a claim denial will generally issue in
the form of a written notice detailing specific reasons for such
denial, and will describe the member's appeal rights and how to

file an appeal.  Id. at 33.  A member may appoint another party
to file an appeal on his behalf, but the member "must name this
person in writing and state that he or she may file the appeal
on [his] behalf," and both the member and his representative
must sign the statement.  Id.  The guide directs members to
deliver all appeals to the Regional Appeals Office located in
Honolulu, Hawaii.  Id. at 34.  Such appeals are then prepared
for internal review, which "will consider all information [the
member] submit[s] (whether or not that information was submitted
with [the member's] initial request for payment or coverage)."
Id.  The EOB that Sidlo received contains substantially similar
information regarding the appeals process, including the
instruction that appeals be sent to the Regional Appeals Office
in Honolulu.  Ex. Y to Decl. of Michelle Scannell at 2, ECF No.
325-34.

### VI.   HLF's Joint Litigation Agreement with Sidlo

On July 15, 2015, Sidlo and HLF entered into a Joint
Litigation Agreement ("JLA") with respect to the instant
lawsuit.  Ex. V to Decl. of Michelle Scannell, ECF No. 325-31.
The JLA states that HLF has engaged counsel to represent both
Sidlo and HLF in the instant litigation, and that HLF agrees to
pay all attorneys' fees and costs related to the lawsuit.  Id.
at 1-2, 4.  The JLA further provides that any recovery will go
to HLF, both to repay it for its attorneys' fees and costs, as

well as to satisfy any of its outstanding invoices. Id. at 4.

HLF also "agrees to limit any liability by [Sidlo] to the amount

recovered in Lawsuit after [Sidlo] has paid any co-pay or out-

of-pocket expenses as set out in the Plan." Id. The JLA states

that Sidlo and HLF "agree to waive any conflict of interest in

the Attorneys representing the interests of both HLF and [Sidlo]

as well as other clients similarly situated as [Sidlo]." Id. at

1.

## STANDARD

Summary judgment is proper where there is no genuine

issue of material fact and the moving party is entitled to

judgment as a matter of law. Fed. R. Civ. P. 56(a). Federal

Rule of Civil Procedure ("Rule") 56(a) mandates summary judgment

"against a party who fails to make a showing sufficient to

establish the existence of an element essential to the party's

case, and on which that party will bear the burden of proof at

trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); see

also Broussard v. Univ. of Cal. at Berkeley, 192 F.3d 1252, 1258

(9th Cir. 1999).

"A party seeking summary judgment bears the initial

burden of informing the court of the basis for its motion and of

identifying those portions of the pleadings and discovery

responses that demonstrate the absence of a genuine issue of

material fact." Soremekun v. Thrifty Payless, Inc., 509 F.3d

978, 984 (9th Cir. 2007) (citing Celotex, 477 U.S. at 323); see also Jespersen v. Harrah's Operating Co., 392 F.3d 1076, 1079 (9th Cir. 2004). "When the moving party has carried its burden under Rule 56 [(a)] its opponent must do more than simply show that there is some metaphysical doubt as to the material facts [and] come forward with specific facts showing that there is a genuine issue for trial." Matsushita Elec. Indus. Co. v. Zenith Radio, 475 U.S. 574, 586-87 (1986) (citation and internal quotation marks omitted); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986) (stating that a party cannot "rest upon the mere allegations or denials of his pleading" in opposing summary judgment).

"An issue is 'genuine' only if there is a sufficient evidentiary basis on which a reasonable fact finder could find for the nonmoving party, and a dispute is 'material' only if it could affect the outcome of the suit under the governing law." In re Barboza, 545 F.3d 702, 707 (9th Cir. 2008) (citing Anderson, 477 U.S. at 248). When considering the evidence on a motion for summary judgment, the Court must draw all reasonable inferences on behalf of the nonmoving party. Matsushita Elec. Indus. Co., 475 U.S. at 587; see also Posey v. Lake Pend Oreille Sch. Dist. No. 84, 546 F.3d 1121, 1126 (9th Cir. 2008) (stating that "the evidence of [the nonmovant] is to be believed, and all justifiable inferences are to be drawn in his favor").

**DISCUSSION**

I.   **Standing**

Defendants argue that Sidlo lacks standing to bring his claim, as Sidlo has contracted away his liability in the JLA with HLF.  KFHP's Motion at 27-29; Defendants' Motion at 8-10.  Further, Defendants argue that Sidlo is not asserting his own rights in the instant action, but rather, those of HLF.  KFHP's Motion at 28.

"ERISA provides for a federal cause of action for civil claims aimed at enforcing the provisions of an ERISA plan."  Reynolds Metals Co. v. Ellis, 202 F.3d 1246, 1247 (9th Cir. 2000) (citing 29 U.S.C. § 1132(e)(1)).  In order to have standing to bring such a claim, "a plaintiff must fall within one of ERISA's nine specific civil enforcement provisions, each of which details who may bring suit and what remedies are available."  Id.  "ERISA's civil enforcement provision, 29 U.S.C. § 1132(a) identifies only plan participants, beneficiaries, fiduciaries, and the Secretary of Labor as persons empowered to bring a civil action."  Spinedex Physical Therapy USA Inc. v. United Healthcare of Ariz., Inc., 770 F.3d 1282, 1288-89 (9th Cir. 2014) (brackets and quotation marks omitted).  However, "a plaintiff [does not] automatically satisf[y] the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that

- 25 -

person to sue to vindicate that right." Spokeo, Inc. v. Robins, 136 S. Ct. 1540, 1549 (2016). A plaintiff must still demonstrate that he meets the standing requirements of Article III of the Constitution. See id.

The Supreme Court has held that in order to satisfy Article III's standing requirements, a plaintiff must show the following:

> First, (1) it has suffered an "injury in fact" that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and 3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc., 528 U.S. 167, 180-81 (2000) (citing Lujan v. Defs. of Wildlife, 504 U.S. 555, 560-61 (1992)). In addition to these requirements, "the federal judiciary has also adhered to a set of prudential principles that bear on the question of standing." Valley Forge Christian Coll. v. Ams. United for Separation of Church and State, 454 U.S. 464, 474 (1982). For example, "the plaintiff generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties." Id. (citing Warth v. Seldin, 422 U.S. 490, 499 (1975)). Finally, the party invoking federal jurisdiction has the "burden of proof and persuasion as

to the existence of standing." Friends of the Earth, 528 U.S. at 198; see also N. Cyprus Med. Ctr. Operating Co. v. CIGNA Healthcare, 781 F.3d 182, 191 (5th Cir. 2015) ("When considering whether a plaintiff has Article III standing, a federal court must assume *arguendo* the merits of his or her legal claim.") (citation and brackets omitted).  In this case that is Sidlo.

In his Opposition to Defendants' Motion, Sidlo states that he has standing in this case because (1) KFHP never sent him an "ERISA-compliant explanation of his benefits"; (2) KFHP failed to administer his claim in accordance with the terms of his plan documents, "thus denying him the benefit of contractually agreed upon benefits"; (3) KFHP offered him "indemnity coverage," rather than the "promised benefits" he and his employer had purchased; and (4) Defendants have admitted that "all the recovery goes to HLF."  Sidlo's Opposition to Defendants' Motion at 12-13.  Further, in his Reply in support of his own motion, Sidlo asserts that KFHP failed to provide him with a "full and fair review of his claim denial" under 29 U.S.C. § 1133(2).  Defendants assert that, putting aside the merits of these alleged violations, "[t]he only concrete harm Sidlo could have sustained, or seeks to redress as a result of these alleged wrongs, is liability for the alleged balance bill owed by KFHP."  Defendants' Reply at 4.

However, KFHP argues that by entering into the JLA with HLF, Sidlo was excused from all liability for the alleged balance bill.  KFHP's Motion at 18.  Indeed, the JLA states, "HLF agrees to limit any liability by [Sidlo] to the amount recovered in Lawsuit after [Sidlo] has paid any co-pay or out-of-pocket expenses as set out in the Plan."  JLA ¶ 6.  This language suggests that Sidlo will still be responsible for his copay if the Court determines that Sidlo's interpretation of the relevant plan provisions is correct, but as KFHP points out, Sidlo's obligation to make a copay does not constitute an injury because it is a contractual obligation under Sidlo's reading of the plan.  See Defendants' Motion at 8 n.1.  Furthermore, KFHP cites deposition testimony in which Sidlo states HLF has verbally informed him that it will waive any payment (including a copayment) by Sidlo.  KFHP's Motion at 18 (citing Ex. O to Decl. of Michelle Scannell at 20:19-25, 44:9-13, 158:6-16).  KFHP thus argues that Sidlo cannot establish the injury in fact requirement of Article III standing, as "the only injury he can claim as to this lawsuit – the alleged balance bill liability – has been expressly waived by HLF through the JLA."  Id. at 29.

Further, KFHP argues that Sidlo cannot establish the redressability requirement for standing "because he has no stake in the outcome of the case."  Id.  If Sidlo prevails, HLF recovers all of the benefits, pursuant to both the plan

documents and the JLA.  Id.  If Sidlo does not prevail, HLF will
be responsible for all attorneys' fees and costs and Sidlo will
remain excused from any liability.  Id.  For similar reasons,
KFHP asserts that Sidlo "cannot satisfy the first prudential
standing element:  namely, that he 'must assert his own legal
rights and interests, and cannot rest his claim to relief on the
legal rights or interests of third parties.'"  Id. (citing
Warth, 422 U.S. at 499).  KFHP contends that "Sidlo has no dog
in the fight and is merely acting as the vehicle for HLF to
pursue claims for further payment from KFHP."  Id.

          In support of his argument that he does have standing,
Sidlo cites to Ninth Circuit case Spinedex, 770 F.3d 1282.
Sidlo's Opposition to Defendants' Motion at 9-10.  In Spinedex,
health care provider Spinedex, as assignee of certain plan
beneficiaries, along with other plaintiffs, filed suit against
defendant health plans and the health plans' administrator
seeking payment of denied benefits claims.  Id. at 1287.  The
district court granted summary judgment to defendants on several
bases, holding, inter alia, that Spinedex lacked Article III
standing.  Id.

          While the health plans at issue provided for the
direct payment of benefits to in-network providers,
beneficiaries were themselves required to seek payment from the
plans in order to reimburse non-network providers for services

rendered.  Id. at 1288.  However, nearly all of the plans at issue permitted beneficiaries to assign their claims to non-network providers, which resulted in the direct payment of such claims to those providers.  Id.  For its part, Spinedex required its patients to sign forms assigning to Spinedex their "rights and benefits" under their health plans, and authorizing Spinedex to represent them in proceedings to pursue payment of benefits. Id. at 1287-88.  Patients also signed forms acknowledging that they were liable for all costs of the services they had received, and that they would be responsible for any costs their plans failed to cover.  Id. at 1287.

After providing services to various plan beneficiaries who had signed these forms, Spinedex submitted claims for the services to the plans' claims administrator; however, the claims administrator only partially reimbursed many of the claims and denied others altogether.  Id. at 1288.  Although certain of Spindex's forms stated that patients would be liable for any unpaid balances, Spinedex did not seek payment from any of the plan beneficiaries for the shortfall.  Id.  As a result, when Spinedex sued to recover these shortfalls from defendants, defendants argued that the patient beneficiaries suffered no injury in fact.  Id. at 1289.  Further, defendants argued that because "Spinedex [stood] in the shoes of, and [could] have no

greater injury than, its assignors, Spinedex [had] not suffered injury in fact," and therefore lacked Article III standing.  Id.

The court rejected defendants' argument and found that the plan beneficiaries did have standing at the time they made their assignment to Spinedex, and that this was the relevant inquiry in determining Spinedex's standing.  Id. at 1291.  The court opined, "The flaw in Defendants' argument is that they would treat as determinative Spinedex's patients' injury in fact as it existed after they assigned their rights to Spinedex . . . . But the patients' injury in fact *after* the assignment is irrelevant.  As assignee, Spinedex took from its assignors what they had *at the time of* the assignment."  Id. (emphasis in original).

Both Sidlo and Defendants draw comparisons to Spinedex based on Spinedex's decision not to seek benefits from the plan beneficiaries.  Sidlo argues that because the Ninth Circuit rejected defendants' argument that there was no injury in fact, this Court should similarly reject KFHP's argument that Sidlo has not suffered an injury because HLF is not seeking to recover the balance bill from Sidlo.  Sidlo's Opposition to Defendants' Motion at 9-10.  Defendants attempt to distinguish the instant case, arguing that in Spinedex, "although there were allegations that [Spinedex] had not sought payment from patients, the amounts at issue were those for which the patients had not been

excused and were allegedly owing under the plans." Defendants'

Reply at 5.  The thrust of Defendants' argument is that since

the JLA explicitly absolves Sidlo from all liability for the

balance bill, there is no legal risk that HLF will later sue him

for such amount.  This is distinct from the situation in which

the beneficiaries in Spinedex found themselves; while there was

no indication that Spinedex would ever seek payment from the

beneficiaries, it still had a legal right to pursue such charges

pursuant to the forms the patients had signed.  Spinedex, 770

F.3d at 1287-88.

     The parties' arguments miss the mark.  The Ninth

Circuit was clear that because "Spinedex has not sought to

recover from its patients any shortfall in Spinedex's recovery

from the Plans . . . the patients have not suffered injury in

fact after assigning their claims."  Id. at 1291.  Similarly,

because HLF has agreed not to seek the amount of the balance

bill from Sidlo, Sidlo has not suffered an injury in fact in

this regard.

     However, the Spinedex court went on to explain:

> At the time of the assignment, Plan
> beneficiaries had the legal right to seek
> payment directly from the Plans for charges
> by non-network health care providers.  If
> the beneficiaries had sought payment
> directly from their Plans for treatment
> provided by Spinedex, and if payment had
> been refused, they would have had an
> unquestioned right to bring suit for

> benefits.   No one, including Defendants in
> this suit, would contend that the
> beneficiaries would have lacked Article III
> standing in that circumstance.   However,
> instead of bringing suit on their own
> behalf, plaintiffs assigned their claims to
> Spinedex.

Id.   This reasoning certainly seems to recognize that

beneficiaries can establish an injury in fact prior to assigning

their rights if their plans fail to pay benefits, since they

would be subject to the risk that their medical providers would

sue them for an outstanding balance; indeed, this was the issue

defendants raised before the court.[5]  But this language also

suggests that beneficiaries can establish an injury based on the

deprivation of their right to healthcare benefits.   Such an

injury is separate and independent from the injury beneficiaries

would suffer if their medical providers opted to sue them for a

shortfall.   In other words, a beneficiary that is not subject to

the risk of a lawsuit by its medical provider does not

necessarily lack standing in an ERISA suit against its insurer;

that beneficiary may still be able to establish a concrete

injury by way of the insurer's denial of benefits for which the

beneficiary has specifically contracted.

---

[5] However, it is worth noting that if the Spinedex beneficiaries
had not assigned their benefits claims to Spinedex, they
presumably would not have signed any of the forms accepting
responsibility for any shortfall.   Thus, an injury based on
Spinedex's right to sue the beneficiaries may not be an issue
under this analysis.

The fact that the JLA provides for direct reimbursement to HLF, rather than to Sidlo, does not alter the analysis.  See JLA ¶ 5.  It appears that when the Spinedex beneficiaries received services from non-network providers, unless they assigned their claims to such providers, the beneficiaries were responsible for obtaining payment from the claims administrator and forwarding such payment to the providers.  Spinedex, 770 F.3d at 1288 ("A typical Plan provision states, 'When you receive Covered Health Services from a non-Network provider, you are responsible for requesting payment from us.'").  Nevertheless, the Ninth Circuit's finding that these beneficiaries would have "an unquestioned right to bring suit for benefits" if their request for payment was denied applies with equal force here, where payment for benefits changes hands directly from KFHP to HLF.

Here, as in Spinedex, participants' and beneficiaries' claims for benefits are premised on an obligation to reimburse a medical provider for services rendered.  Thus, the Spinedex beneficiaries were no more entitled to a payment of benefits from their insurer than was Sidlo, simply because the Spinedex beneficiaries acted as an intermediary for payment to Spinedex.  Under both scenarios, payment ultimately accrues to a third party.  In fact, in one regard Sidlo seems to have a stronger standing claim than the beneficiaries in Spinedex.  Unlike the

Spinedex beneficiaries, Sidlo has brought the instant lawsuit himself, apparently purportedly having not completely assigned his right to sue to HLF.  Indeed, the JLA indicates that HLF has engaged attorneys to represent both itself *and* Sidlo in this litigation.[6]

The foregoing conclusions are supported by the Fifth Circuit case North Cyprus, 781 F.3d 182, which followed the reasoning in Spinedex in rejecting defendant's argument that patients lacked standing because "there was no injury in fact to patients because they were not billed for the amount allegedly due from the insurance plans."  Id. at 192.  The court in North Cyprus explained:

> [A] patient suffers a concrete injury if
> money that she is allegedly owed
> contractually is not paid, regardless of
> whether she has directed the money be paid
> to a third party for her convenience.  The
> patient in this circumstance is being denied
> use of funds rightfully hers.  The fact that

---

[6] The Court notes that HLF, as the purported assignee of all of Sidlo's plan rights pursuant to the Standard Ambulance Signature Form and Billing and Consent to Transport Form, contends that it has a right to sue KFHP directly; although that appears inconsistent with HLF's having entered into the JLA with Sidlo and subsidizing Sidlo's similar lawsuit against Defendants.  See HLF and AMRG's Opp'n to Def. KFHP's Mot. for Summ. J. Against HLF and AMRG at 2 ("HLF agree[s] that the subject Kaiser members have assigned to HLF, and HLF has accepted, the members' right to enforce Kaiser's obligation to pay HLF for the services rendered.  HLF has in fact recently filed a motion to amend its Counterclaim in this action in order to assert a claim as an assignee seeking to enforce Kaiser's obligations."), ECF No. 474.

she has directed the funds elsewhere does not change that reality. From a different angle, failure to pay also denies the patient the benefit of her bargain. In purchasing her Cigna plan she agreed to pay for coverage at out-of-network providers like North Cypress, and Cigna is failing to uphold the bargain by paying for covered services. ERISA is designed "to protect contractually defined benefits" and has a "repeatedly emphasized purpose" of doing so. The contract law concept of benefit of the bargain is a friendly fit.

Id. at 193. But see Am. Med. Ass'n v. United Healthcare Corp., No. 00 Civ. 2800 (LMM), 2007 WL 1771498, at *19, n.18 (S.D.N.Y. June 18, 2007) (finding that plaintiffs lacked standing where "the provider [had] expressly excused the patient from paying the remainder of the claim," and that the alleged "deprivation of contract expectations and harm to the relationship between patients and out-of-network providers" were "abstract injuries [that did] not constitute 'distinct and palpable' harm for purposes of standing").

Here, Sidlo entered into a contract with KFHP, whereby KFHP agreed to reimburse non-contracted providers such as HLF for services rendered to Sidlo. Despite the fact that KFHP remits payment for services directly to HLF, Sidlo had an expectation and legal right that such payment would be made on his behalf. KFHP's alleged denial of that right constitutes a concrete injury to Sidlo for purposes of establishing Article III standing.

For similar reasons, Sidlo is able to establish redressability because if the Court adopts Sidlo's interpretation of the subject health plan, KFHP will be required to pay an outstanding balance for Sidlo's medical transport. Such payment will vindicate Sidlo's right to benefits. Likewise, in bringing this lawsuit, Sidlo satisfies the prudential standing requirement that he "assert his own legal rights and interests," rather than merely "the legal rights or interests of third parties." Valley Forge, 454 U.S. at 474.

For all of the foregoing reasons, the Court FINDS that Sidlo has standing to assert his claims in the instant lawsuit.

## II.  Count I

Sidlo brings suit under ERISA's civil enforcement provision, which allows a party "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). "[A] denial of benefits challenged under § 1132(a)(1)(B) is to be reviewed under a de novo standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989); see also Opeta v. Nw. Airlines Pension Plan for Contract Emps., 484 F.3d 1211, 1216 (9th Cir. 2007) ("We have

held that the default standard of review in ERISA cases is de novo and that discretion exists only if it is 'unambiguously retained.'").  Both Sidlo and KFHP agree that the Court should employ a de novo standard of review in evaluating Sidlo's benefits claim.  Sidlo's Motion at 13; KFHP's Opposition at 12 n.5.  "[W]hen the court reviews a plan administrator's decision under the de novo standard of review, the burden of proof is placed on the claimant."  Muniz v. Amec Constr. Mgmt., Inc., 623 F.3d 1290, 1294 (9th Cir. 2010).

Under a de novo standard, "[t]he court simply proceeds to evaluate whether the plan administrator correctly or incorrectly denied benefits."  Abatie v. Alta Health & Life Ins. Co., 458 F.3d 955, 963 (9th Cir. 2006).  A court must review the terms of the plan without giving deference to either party's interpretation.  Firestone, 489 U.S. at 112-13.  Additionally, while a court's review is generally limited to the record before the plan administrator, "new evidence may be considered under certain circumstances to enable the full exercise of informed and independent judgment."  Mongeluzo v. Baxter Travenol Long Term Disability Benefit Plan, 46 F.3d 938, 943 (9th Cir. 1995). It is within the Court's discretion whether to allow evidence not before the plan administrator.  Id. at 943-944 (citing Quesinberry v. Life Ins. Co. of N. Am., 987 F.2d 1017, 1025 (4th Cir. 1993).  "The district court should exercise its discretion,

however, only when circumstances clearly establish that additional evidence is necessary to conduct an adequate de novo review of the benefit decision."[7]  Id. at 944 (quoting Quesinberry, 987 F.2d at 1025).

---

[7] Sidlo urges that the Court's § 502(a)(1)(B) inquiry should be limited to a review of the evidentiary record that was presented to the plan administrator.  Sidlo's Reply at 11-13.  He cites to Ninth Circuit case Mongeluzo, which quotes the Fourth Circuit, stating, "[W]e adopt a scope of review that permits the district court in its discretion to allow evidence that was not before the plan administrator . . . . In most cases, where additional evidence is not necessary for adequate review of the benefits decision, the district court should only look at the evidence that was before the plan administrator . . . at the time of the determination."  (emphasis in original) (quoting Quesinberry, 987 F.2d at 943-44).  The Ninth Circuit has elsewhere referenced the Fourth Circuit's "non-exhaustive list of exceptional circumstances where introduction of evidence beyond the administrative record could be considered necessary: claims that require consideration of complex medical questions or issues regarding the credibility of medical experts; the availability of very limited administrative review procedures with little or no evidentiary record; the necessity of evidence regarding interpretation of the terms of the plan rather than specific historical facts; instances where the payor and the administrator are the same entity and the court is concerned about impartiality; claims which would have been insurance contract claims prior to ERISA; and circumstances in which there is additional evidence that the claimant could not have presented in the administrative process."  Opeta, 484 F.3d at 1217 (quoting Quesinberry, 987 F.2d at 1027).

To the extent this Court considers additional information in its § 502(a)(1)(B) analysis, it finds that doing so is appropriate, due to the "necessity of evidence regarding interpretation of the terms of the plan rather than specific historical facts."  See id.  Indeed, the inquiry with which the Court is faced involves an interpretation of the plan terms, including the Inter-Facility Transport Policy, and not the facts giving rise to Sidlo's claim.

The Supreme Court has "recognized the particular importance of enforcing plan terms as written in § 502(a)(1)(B) claims." Heimeshoff v. Hartford Life & Accident Ins. Co., 134 S. Ct. 604, 612 (2013). When interpreting the terms of an ERISA plan, the Court considers the plan documents as a whole, and if they are unambiguous, construes them as a matter of law. Vaught v. Scottsdale Healthcare Corp. Health Plan, 546 F.3d 620, 626 (9th Cir. 2008) (quoting Welch v. Unum Life Ins. Co. of Am., 382 F.3d 1078, 1082 (10th Cir. 2004)). At the same time, courts have indicated that while a fiduciary cannot adopt just any guideline it chooses and then rely on it "with impunity," it may rely on a guideline that "reasonably interpret[s] their plan[]." Egert v. Conn. Gen. Life. Ins. Co., 900 F.2d 1032, 1036 (7th Cir. 1990). Some courts have even held that implementation of an "undisclosed interpretive guideline" may be appropriate if that guideline "reasonably interprets the plan." See May v. Roadway Express, Inc., 813 F. Supp. 1280, 1284 (E.D. Mich. 1993) (reviewing a denial of benefits under the arbitrary and capricious standard of review); see also Smith v. Health Servs. of Coshocton, 314 F. App'x 848, 859 (6th Cir. 2009) ("A plan administrator can rely on internal rules or policies in construing the terms of an employee benefits plan only if these rules or policies reasonably interpret the plan."). But see White, No. C 10-1855 BZ, 2011 WL 2531193, at *5 (N.D. Cal. 2011)

("Courts in this District have previously held that insurer defendants in ERISA actions cannot deny claims based on standards that are not contained in the policy.").

Sidlo argues that the Ambulance Services provision clearly and expressly governs this dispute. Sidlo's Motion at 19. He contends that pursuant to this provision, KFHP is responsible for paying 80% of the "Applicable Charges" for an air ambulance transport, which, for a non-contracted provider like HLF, are the "actual billed charges." Id. at 19, 27. Sidlo further argues that the evidence shows KFHP waives the 20% copay obligation for members, and that KFHP is therefore liable to HLF for 100% of the actual billed charges for medical air transports. Id. at 23. In support of this latter argument Sidlo relies on deposition testimony of KFHP's 30(b)(6) witness stating that Kaiser covers "100 percent of the charges," Ex. 17 to Decl. of Toby Sidlo at 89:2-3, ECF No. 286-21; Defendants' counsel's statement during the Motion to Stay hearing that "participants owe nothing in terms of a co-pay or a deductible for these flights," ECF No. 93 at 5:18-19; and a letter to the Insurance Commissioner in which Kaiser Permanente Vice President Shawn Mehta wrote that "Kaiser wishes to clarify that it will also indemnify all impacted Members from HLF's baseless claims," Ex. 12 to Decl. of Toby Sidlo (emphasis in original).

- 41 -

Because the Ambulance Services provision specifically refers to "air ambulance services," Sidlo argues that his interpretation is the "most reasonable and plausible reading of the plan terms." Id. at 20.  He also asserts that the Benefit Schedule provides an interpretive guideline that supports his reading.  Id.  The guideline states, "Unless explicitly described in a particular benefit section (e.g. physical therapy is explicitly described under the hospice benefit section), each medical service or item is covered in accord with its relevant benefit section."  Ex. D. to Decl. of Cherie O'Connor at 25.

Sidlo urges that, in contrast, KFHP "cannot identify a single substantive provision in any Plan document that supports its view of Plaintiff's benefit coverage for ambulance services."  Sidlo's Reply at 1.  However, KFHP asserts that it processes claims such as Sidlo's according to the Inter-Facility Transport Policy, which it maintains is listed in the claim handbook used by KFHP's third party claims administrator, EMI. KFHP's Motion at 9.  Sidlo counters that by doing so, "KFHP has essentially crafted a 'policy' out of thin air," disingenuously relying on "one line in what appears to be a third-party vendor's claims manual" for its interpretation.  Sidlo's Opposition to KFHP's Motion at 9.  Sidlo further states that the Ambulance Services provision makes no distinction between transports from the scene of an incident and inter-facility

transports, and that there is no mention in the policy of a reimbursement rate at twice the applicable Medicare rate, which is the rate at which KFHP reimburses HLF for inter-facility flights. Sidlo's Reply at 2, 14.

In any case, Sidlo argues, "KFHP failed in four separate communications with [Sidlo] to advise him of the Plan provision it claimed governed his reimbursement claim," and in fact, made reference to a copay in several communications, supporting the notion that the Ambulances Services provision governs. Id. at 20-21, 26. For example, the EOB makes reference to a 20% copay where it states in the upper right-hand corner of the document, "GROUP NAME: KP/HAWAII COMMERCIAL 20% COPAY." Id. at 20; Ex. 5 to Decl. of Toby Sidlo. However, as KFHP logically points out, what Sidlo is referring to is a "naming convention for the form of policy purchased by his Group at the top right-hand corner of the EOB." KFHP's Opposition at 20; Supp. Decl. of Cherie O'Connor ¶ 2. Furthermore, the EOB very clearly indicates that Sidlo's copayment for his transport is $0.00. Ex. 5 to Decl. of Toby Sidlo.

Sidlo also states that KFHP's letter to the Insurance Commissioner implied the applicability of the Ambulance Services provision when it stated, "Kaiser wishes to clarify that it will also indemnify all impacted Members from HLF's baseless claims (beyond the costs of their co-pays)." Sidlo's Motion at 20-21;

- 43 -

Ex. 12 to Decl. of Toby Sidlo (emphasis in original).   Yet KFHP

has a proper explanation for its choice of words, clarifying,

"Without knowing whether some Members were transported by HLF

from the scene of an incident, KFHP could not exclude the

applicability of the Ambulance Services provision, or other

provisions with a copayment, to some Members."   KFHP's

Opposition at 21.   Supporting this explanation is the fact that

the letter purported to be a response to all complaints by

members in connection with transportation services rendered by

HLF.   Ex. 12 to Decl. of Toby Sidlo.

Sidlo also asserts that "KFHP's own in-house legal

counsel indicated during an exchange following a face-to-face

meeting with HLF that [the Ambulance Services provision] and the

'Applicable Charges' Plan provisions applied to claims of HLF

patients."   Sidlo's Motion at 21.   Sidlo is referring to an

email in which KFHP's in-house counsel forwarded excerpts of

certain Kaiser policies, including the Ambulance Services

provision (but not the Inter-Facility Transport Policy).   Ex. 16

to Decl. of Toby Sidlo, ECF No. 286-20.   However, there is no

indication on the face of the email for what purpose these

excerpts were being forwarded, and the Court will not construe

the email as an admission by KFHP that the Ambulance Services

provision applies.

Finally, Sidlo argues that KFHP's 30(b)(6) witness admitted during his deposition that the Ambulance Services provision is the sole provision governing coverage for ambulance services under the plan documents.  Sidlo's Motion at 21.  In support of this argument, Sidlo cites to the deposition testimony of James G. Adams, which states:

> Q:  Is the interfacility transfer policy written anywhere?
>
> A:  No, it is not . . . . But it has been – the policy has been executed for at least two decades in the same way.
>
> Q:  And, of course, Kaiser can choose to pay 100 percent of whatever charges it might choose to pay, including facility-to-facility transports, correct?
>
> A:  Yes.
>
> Q:  But at a minimum, Kaiser is obligated to provide its members with the benefits that are promised by this benefit schedule, correct?
>
> A:  Correct.
>
> Q:  And that would include ambulance services, payments of 80 percent under section G, correct?
>
> A:  Yes.
>
> Q:  Okay.  And there's nowhere else where coverage for ambulance services is explicitly described under a particular benefit section, is there?
>
> A:  No.  There is not.

Ex. 17 to Decl. of Toby Sidlo at 95:17-96:12.  Adams certainly

confirms that the Ambulance Services provision is the only place

in the plan documents that explicitly describes coverage for

ambulance services.  However, Sidlo slightly mischaracterizes

this evidence, because Adams also states that KFHP has been

applying the Inter-Facility Transport Policy for at least twenty

years, which contradicts Sidlo's contention that the Ambulance

Services provision must govern.

KFHP argues that it was permitted to adopt its

"decades-old" Inter-Facility Transport Policy pursuant to § 10.F

of the Service Agreement, which permits it to "adopt reasonable

policies, procedures, rules and interpretations to promote

orderly and efficient implementation of [the] Service

Agreement."  KFHP's Motion at 21; KFHP's Opposition at 18.  KFHP

contends that its policy, which reimburses providers for

members' transport at no cost to members, including copays, is

reasonable and comports with the policy's proviso that

"[c]overage is limited to the medical services which are cost

effective."  KFHP's Opposition at 13-14; KFHP's Reply at 9; Ex.

D. to Decl. of Cherie O'Connor at 25.  It is also consistent

with Section S(6) of the Benefit Schedule, which does not

contemplate a copayment for continuing care.  KFHP's Motion at

9.  Under the policy, "KFHP determines the fair market value of

the services and directs EMI to pay that rate."  KFHP's Reply at

9.  KFHP contends that it has never represented to Sidlo, in the EOB or otherwise, that he owes a copayment, because no copayment is required by the Inter-Facility Transport Policy, as it is under the Ambulances Services provision; KFHP asserts that this fact supports its interpretation of the plan.  Id. at 10.

KFHP argues that Sidlo's interpretation, on the other hand, is unreasonable, and in fact "harms all putative class members other than Sidlo, and could inflict financial harm on non-class members who flew with [AMR]."[8]  Id. at 11.  KFHP urges that Sidlo's interpretation could impose "thousands of dollars in copayment liability" on members.  KFHP's Opposition at 23-24. Beyond arguing that Sidlo's interpretation is unreasonable, KFHP asserts that "there is nothing equitable about an outcome in which KFHP must pay substantially above the fair market value for services provided to its members, and members must pay a large copayment on those excessive charges."  KFHP's Motion at 30.

Finally, KFHP addresses the potential risk that, if the Court were to apply KFHP's interpretation, HLF could sue

---

[8] KFHP states that the ERISA plans of members who received transport services from AMR contain similar language on air transport as Sidlo's plan, and that if the Court determines the Ambulance Services provision applies to HLF flights, "KFHP would have to consider such a holding in connection with administration of its other ERISA plans and members."  KFHP's Opposition at 14 n.7.

members for the balance of their bill.  The concern is that if KFHP pays only a portion of the transport cost in accordance with the Inter-Facility Transport Policy, rather than 80% of the actual billed charge (with the member paying the remaining 20%), HLF might sue that member for the difference between the portion KFHP pays and the actual billed charge.  KFHP argues that established contract law, Hawaii and other state statutes, and the Federal Aviation Act's consumer protection rules and regulations, among other authorities, would preclude HLF from being able to bring such a suit against members, and even if HLF did decide to bring such a suit, "KFHP stands ready to defend its Members."  KFHP's Opposition at 15 n.8; KFHP's Reply at 14.

Turning to the Ambulance Services provision, it is not clear to the Court that the provision actually governs all air ambulance transports, including inter-facility transports.  The provision states, "Air ambulance must be for the purpose of transporting the Member to the nearest medical facility designated by [KFHP] for receipt of medically necessary acute care, and the Member's condition must require the services of an air ambulance for safe transport."  This language certainly seems to refer to a transport from the scene of an incident to a medical facility, when the primary focus is transporting the patient to the closest facility for emergency care.

However, it is at odds with certain types of inter-facility transport, which may require a trip to a location other than the "nearest medical facility" for treatment of an urgent condition.  Indeed, Sidlo was *already* receiving treatment at a facility on Kauai when physicians determined the facility was unable to provide adequate treatment for his burn injuries and elected to transport him to a more "suitable" burn center, where he received skin grafts for the next month.  Sidlo's Motion at 4-5; FAC ¶¶ 14-18.

The Court also notes that even if the Ambulance Services provision does apply, it does not necessarily require KFHP to pay 80% of HLF's "actual billed charges."  The provision makes reference to "Applicable Charges," which is a defined term in the agreements.  See Ex. D. to Decl. of Cherie O'Connor at 4.  Sidlo's argument is that because HLF is a "non-contracted" provider, KFHP is required to pay its "actual billed charges."  Sidlo's Motion at 19.  In support of his contention, Sidlo points to subsection (2) of the "Applicable Charges" definition, dealing with "other medical services."  See id. at 7; FAC ¶ 50; Sidlo's Opposition to KFHP's Motion at 8.  Yet subsection (2) makes no distinction between "contracted" and "non-contracted" providers, and defines "Applicable Charges" as to *all* providers other than Kaiser Permanente as the "negotiated rate" or the "actual billed charge."  In fact, Sidlo seems to recognize that

KFHP could endeavor to negotiate rates with a non-contracted

provider.  See Sidlo's Motion at 9 (stating that a March 2015

email from KFHP's legal counsel "was sent in connection with a

face-to-face negotiation between KFHP and HLF to determine what

the appropriate reimbursement rate was for air ambulance

transports in the Hawaii Region."); id. at 11 ("There is no

mention of Medicare's reimbursement rates in any coverage term

applicable to air ambulance services, only the actual billed

charge rate or the negotiated rate.").  Accordingly, even if

this Court were to hold that the Ambulance Services provision

governed, KFHP may only be liable to HLF for a negotiated rate.

Turning to a separate issue, the Court is persuaded by

KFHP's argument that the Inter-Facility Transport Policy is

consistent with Section S(6) of the Benefit Schedule.  See

KFHP's Motion at 9, 22.  Section S, entitled "Emergency and

Urgent Care Services," contains a section on "Continuing or

Follow-up Treatment."  Ex. D. to Decl. of Cherie O'Connor at 32-

33.  This section provides that when a member "obtains prior

approval from [KFHP] or a Physician in the Service Area, covered

benefits include the cost of necessary ambulance service or

other special transportation arrangements medically required to

transport the Member to a Hospital or Medical Office in the

Service Area or to a contracting hospital or medical office in

the nearest other Health Plan Region for continuing or follow-up

treatment." Id. at 33.  KFHP points out that this section of the Benefit Schedule makes no reference to any sort of copay, and unlike the Ambulance Services provision, applies specifically to inter-facility transports.  KFHP's Motion at 9, 22.

The Court also credits KFHP's contention that the Inter-Facility Transport Policy has been in place for over twenty years.  While it is not specifically spelled out in the plan documents, it finds support in the manual to which EMI refers when processing claims.  Indeed, the plan does leave room for reasonable policies and procedures that serve to efficiently implement the plan, and the policy does uphold one of the plan's primary objectives of covering medical services that are cost effective.

More importantly, KFHP's interpretation is clearly in the best interests of its members, who otherwise stand to pay 20% of air transportation bills in the tens of thousands of dollars.  Under ERISA, a plan fiduciary such as KFHP is required to "discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and . . . with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims."  29 U.S.C. §

1104(a)(1)(B).  By adopting a policy for inter-facility transport that asks nothing of the member from a cost standpoint, KFHP did just that.

For all of the foregoing reasons, the Court GRANTS KFHP's Motion for Summary Judgment with respect to Count I and DENIES Sidlo's Motion for Summary Judgment regarding the same.

### III. Count II

Count II, which seeks relief under 29 U.S.C. § 1132(a)(3), alleges that Sidlo and other plan members were denied adequate notice detailing the reasons for KFHP's denial of their benefits claims, as well as a full and fair review of KFHP's decision to deny such claims in violation of 29 U.S.C. § 1133.  FAC ¶¶ 117-126.  Sidlo also asserts that KFHP is "operating with [an] inherent structural conflict of interest by acting as both administrator and insurer of certain Plan members' benefits," as well as an "additional conflict of interest by denying the claims of [] participants because of its steadfast refusal to pay promised reimbursements under its insured plans because of a[n] ongoing dispute with the Plaintiff's provider."  Id. ¶¶ 119(b)-(c).  Sidlo requests equitable relief requiring (1) that KFHP re-administer all "underpaid claims," and an order "enjoining . . . further use of artificially lowered reimbursement rates for participants requiring air medical transportation services"; (2) that KFHP

make an additional payment of 20% to cover Sidlo's and members'
copay obligation under the Ambulance Services provision; and
(3) that KFHP "provide each affected member with a corrected
statement of rights explaining their coverage terms under the
contracts and withdrawing the misleading communications
previously sent."  Id. ¶ 120.

Pursuant to 29 U.S.C. § 1132(a)(3), "[a] civil action
may be brought . . . by a participant, beneficiary, or fiduciary
(A) to enjoin any act or practice which violates any provision
of this subchapter or the terms of the plan, or (B) to obtain
other appropriate equitable relief (i) to redress such
violations or (ii) to enforce any provisions of this subchapter
or the terms of the plan."  Sidlo seeks equitable relief for
KFHP's alleged violation of 29 U.S.C. § 1133, which states,
"[E]very employee benefit plan shall – (1) provide adequate
notice in writing to any participant or beneficiary whose claim
for benefits under the plan has been denied, setting forth the
specific reasons for such denial, written in a manner calculated
to be understood by the participant, and (2) afford a reasonable
opportunity to any participant whose claim for benefits has been
denied for a full and fair review by the appropriate named
fiduciary of the decision denying the claim."

"[T]he usual remedy for a violation of § 1133 is 'to
remand to the plan administrator so the claimant gets the

- 53 -

benefit of a full and fair review.'"  Chuck v. Hewlett Packard Co., 455 F.3d 1026, 1035 (9th Cir. 2006); see also Blau v. Del Monte Corp., 748 F.2d 1348, 1353 (9th Cir. 1984) (abrogated on other grounds by Firestone, 489 U.S. 101) ("Ordinarily, a claimant who suffers because of a fiduciary's failure to comply with ERISA's procedural requirements is entitled to no substantive remedy.").  Accordingly, the most Sidlo could seek to recover for a violation of 29 U.S.C. § 1133 is an order remanding his benefits decision to the administrator for a full and fair review of any claim denial.

However, given the Court's holding that the Inter-Facility Transport Policy governs inter-facility medical air transport, Sidlo did not suffer an adverse benefit determination, and was therefore not entitled to "adequate notice" or a "full and fair review" of any claim denial, per 29 U.S.C. § 1133.  See 29 C.F.R. § 2560.503-1(m)(4) ("The term 'adverse benefit determination' means any of the following:  a denial, reduction, or termination of, or a failure to provide or make payment (in whole or in part) for, a benefit . . . .").  Indeed, there was no claim denial to which either a notice or review would apply.

Even if Sidlo's benefits claim had been denied, his equitable relief claim would still fail.  As KFHP correctly points out, the § 1132(a)(3) claim Sidlo alleges in Count II is

duplicative of his § 1132(a)(1)(B) claim alleged in Count I.
See KFHP's Motion at 33-34; KFHP's Reply at 17-19.  "[T]he
Supreme Court [has] described § 1132(a)(3) as a 'catchall'
provision that acts as a safety net, offering appropriate
equitable relief for injuries caused by violations that § 1132
does not elsewhere adequately remedy."  Moyle v. Liberty Mut.
Ret. Benefit Plan, 823 F.3d 948, 959 (9th Cir. 2016) (citing
Varity Corp. v. Howe, 516 U.S. 489, 512 (1996)) (brackets and
some quotation marks omitted).  The Ninth Circuit has held that
this does "not explicitly prohibit a plaintiff from pursuing
simultaneous claims under § 1132(a)(1)(B) and § 1132(a)(3)," so
long as these claims present "alternative - rather than
duplicative - theories of liability."  Id. at 961.  Thus,
"§ 1132(a)(1)(B) and § 1132(a)(3) claims can proceed
simultaneously if they plead distinct remedies."  Id.

       By seeking the re-administration of Sidlo's claim and
an order that requires KFHP to cover all charges in accordance
with the Ambulance Services provision, including Sidlo's 20%
copay obligation, Count II requests the same relief as Count I,
which seeks "100% of the total air ambulance charges."  Compare
FAC ¶ 120, with id. ¶¶ 114-16.  Count II also seeks equitable
relief "enjoining . . . further use of artificially lowered
reimbursement rates" and asks that KFHP provide members with a
"corrected statement of rights explaining their coverage terms."

Id. ¶ 120.  This is essentially the same relief Count I

requests, which is that KFHP "clarify and enforce [members']

rights to payment of those amounts still due and owing . . .

through the entry of an injunction in accordance with the terms

of the Plan."  Id. ¶ 116.  Accordingly, Count II is

impermissibly duplicative of Count I.

　　　　Apart from these flaws, it is questionable whether

Sidlo properly availed himself of KFHP's review process for

claim denials.  Per the procedures outlined in Sidlo's Member

Guide and EOB, Sidlo was required to not only submit his appeal

to the Regional Appeals Office in Honolulu, but also notify KFHP

in writing if HLF would be appealing on his behalf.  KFHP states

that its Regional Appeals Office has no record of an ERISA

appeal regarding Sidlo's medical air transport with HLF filed by

either Sidlo or by HLF.  KFHP's CSF ¶ 26.  Similarly, KFHP can

locate no evidence that Sidlo ever informed KFHP that HLF would

be filing an appeal on his behalf.  Ex. AA to Decl. of Michelle

Scannell at 87:4-88:22.

　　　　Sidlo, on the other hand, characterizes his April 17,

2015 letter to EMI as "an ERISA appeal with the Kaiser vendor

who made partial payment."[9]  Sidlo's CSF ¶ 26.  Sidlo states

---

[9] Sidlo further asserts that the complaint he sent to the
Insurance Commissioner was an appeal.  Sidlo's Opposition to
KFHP's Motion at 15.  The Court finds that this argument lacks
(continued . . .)

that, per the claims manual EMI uses to process member claims,
EMI is required to immediately forward all member appeals to
KFHP's Regional Appeals Office, and failed to do so with respect
to Sidlo's letter.  Sidlo's Opposition to KFHP's Motion at 16;
Ex. F to Decl. of Shari Ilalaole at 7.  In response, KFHP
addresses the portion of the EMI claims manual to which Sidlo
makes reference, stating, "EMI procedures on 'provider appeals'
pertain to clarification of information in the provider's
possession to cure deficiencies in an initial claim . . . . Such
provisions are distinct from Member appeals of adverse benefit
determinations."  KFHP's Reply at 4.

   KFHP's argument is a bit disingenuous, because the
provision in the claims manual to which Sidlo cites deals with
both member appeals and provider appeals.  The provision states,
"Members have the right to appeal denials of coverage or payment
made by KPHI [Kaiser Permanente Hawaii]," and directs EMI to
forward all such appeals to the Regional Appeals Office.  Ex. F
to Decl. of Shari Ilalaole at 7.  Presumably, KFHP focuses on
the portion of the provision that deals with provider appeals
because HLF sent the letter to EMI on Sidlo's behalf, and Sidlo
never informed KFHP that HLF would be appealing on his behalf;

---

merit because, to the extent Sidlo's complaint to the Insurance
Commissioner constituted an appeal, it was filed outside the
necessary appeal channels required by the plan documents.

thus, to the extent the letter could be considered a valid appeal at all, KFHP might deem this communication a provider appeal, rather than a member appeal.

Nevertheless, while Sidlo failed to invoke the proper procedure for filing an appeal, what the language in the EMI claims manual indicates is that KFHP accounts for the possibility that members and providers might file appeals outside the normal channels outlined in the Member Guide and EOB. But beyond that, a question remains as to KFHP's, members', and providers' obligations once the appeal is forwarded to the Regional Appeals Office. For example, upon receiving a forwarded appeal from EMI, would KFHP contact the member and instruct him to comply with other appeal requirements, such as providing signed, written notice that a provider would be appealing on his behalf?

Regardless of KFHP's obligations upon receiving HLF's letter, as well as whether HLF's letter actually constitutes an appeal, the fact remains that Sidlo suffered no adverse benefit determination, and so there was nothing for him to appeal.[10]

---

[10] In fact, Sidlo's counsel seems to have recognized this circumstance. See Videotaped Deposition of Toby Sidlo, Ex. AA to Decl. of Michelle Scannell at 93:24-94:1 (MR. CONWAY: "[W]hy don't you point out that the EOB said he owed nothing? What's he supposed to appeal?").

Accordingly, Sidlo was not deprived of a "full and fair review" of his claim denial, because his claim was not denied.

Finally, Sidlo has not identified any authority that permits a claimant to assert a claim for equitable relief based on a fiduciary's conflict of interest.  Separately, the Supreme Court has "[made] clear that the existence of a conflict of interest is relevant to how a court conducts abuse of discretion review." Abatie, 458 F.3d at 965.  "In discussing abuse of discretion review, the Supreme Court cautioned that, 'if a benefit plan gives discretion to an administrator or fiduciary who is operating under a conflict of interest, that conflict must be weighed as a facto[r] in determining whether there is an abuse of discretion.'" Id. (quoting Firestone, 489 U.S. at 115) (some quotation marks omitted).  Here, however, the Court reviews Sidlo's benefits decision de novo, so KFHP's purported conflict of interest is not at issue.  See id. at 963 ("If de novo review applies . . . [t]he court simply proceeds to evaluate whether the plan administrator correctly or incorrectly denied benefits, without reference to whether the administrator operated under a conflict of interest.").

For all of the foregoing reasons, the Court GRANTS KFHP's Motion with respect to Count II.

## IV.  Count III

Defendants request summary judgment on Sidlo's Count III, which seeks equitable relief for KFHP's "failure to timely issue Plaintiff and the class a summary of material modifications."[11]  See FAC ¶¶ 127-134.  29 U.S.C. § 1022 provides that "[a] summary of any material modification in the terms of the plan and any change in the information required under subsection (b) of this section shall be written in a manner calculated to be understood by the average plan participant and shall be furnished in accordance with section 1024(b)(1) of this title."  Section 1024(b)(1), in turn, states, "The administrator shall furnish to each participant, and each beneficiary receiving benefits under the plan, a copy of . . . all modifications and changes referred to in section 1022(a) of this title . . . ."

Sidlo contends KFHP modified the plan by substituting indemnity benefits in place of healthcare benefits without properly notifying members.  Sidlo's Opposition to Defendants' Motion at 27.  Sidlo recognizes that in general, only a plan administrator is responsible for issuing an SMM.  FAC ¶ 129.

---

[11] Sidlo states that he is entitled to partial summary judgment on Count III pursuant to Fed. R. Civ. P. 56(f).  However, his argument instead suggests that he is seeking partial summary judgment with respect to Count IV, which deals with breach of fiduciary duty.  See Sidlo's Opposition to Defendants' Motion at 1, 17-20.

The administrator of Sidlo's plan is the Group employer.[12]  Ex. D

to Decl. of Michelle Scannell at 1 (indicating that "Na Pali Sea

Tours" is the plan administrator).  However, Sidlo argues that

because KFHP "assumed total control" of the plans and "[made]

changes unilaterally and in violation of the Plan terms," KFHP,

not the Group, should be required to issue an appropriate SMM.

Sidlo's Opposition to Defendants' Motion at 25, 27.  Further,

Sidlo argues that to the extent the Group may be liable for

failure to issue an SMM, KFHP assumed such liability pursuant to

Section S of the Service Agreement, entitled "Indemnification."[13]

FAC ¶ 129.

---

[12]  Sidlo's plan specifically states, "For private employer
Groups, Group is the Plan Administrator of this employee benefit
plan for purposes of the Employee Retirement Income Security Act
of 1974 (ERISA).  Group agrees to prepare and distribute to all
Members a Summary Plan Description describing the terms,
benefits and conditions of the employee benefit plan, in
compliance with ERISA requirements.  Group agrees to inform
Members of all information required by ERISA . . . . The Group
is responsible for all Plan Administrator and other duties under
ERISA, not expressly assumed by Kaiser Permanente under this
Service Agreement.  Health Plan is a named fiduciary to
adjudicate health benefit claims relating to coverage under this
Service Agreement, but has not agreed to accept any other
fiduciary responsibility."  Ex. D to Decl. of Michelle Scannell
at 17.

[13]  Section S states, in relevant part, "Health Plan shall
indemnify and hold harmless Group from any and all liabilities,
claims, demands, actions, losses, damages, costs and expenses
(including attorneys' fees) of any kind or nature which Group
may incur arising out of or related to acts or omissions
committed or alleged to have been committed by Health Plan, its
                                        (continued . . . .)

Here, there is no indication KFHP modified the plan. In adjudicating Sidlo's claim, EMI applied a policy that has been in effect for over twenty years and that is consistent with the terms of the plan.  By offering to indemnify members against any attempts by HLF to recover the remainder of its medical air transport bills, KFHP sought to protect its members in the midst of a rate dispute with one of its providers.  The letter KFHP sent to Sidlo offering to provide him with free legal services did not purport to replace any benefits Sidlo was due under the plan.  Indeed, Sidlo's claim was reimbursed to the fullest extent anticipated by the plan.[14]  Furthermore, even if KFHP had impermissibly altered the plan terms, any liability it might incur pursuant to Section S could not establish a cause of action for Sidlo, because as KFHP correctly points out, this

---

employees or agents."  Ex. D to Decl. of Michelle Scannell at 23.

[14] While the Court has determined that KFHP properly adjudicated Sidlo's claim in accordance with the Inter-Facility Transport Policy, an issue remains as to whether KFHP reimbursed HLF at the proper rate.  KFHP has chosen to pay HLF 200% of the applicable Medicare rate for inter-facility transport claims; however, whether this reimbursement rate is appropriate is an issue not currently before the Court (although it is the penultimate issue undergirding both this lawsuit and the KFHP v. HLF litigation; yet KFHP and HLF appear to avoid addressing this issue, whether by agreeing to binding arbitration or otherwise, and instead the parties proceed to explore their controversy through numerous ERISA challenges).

section of the plan requires KFHP to indemnify the *Group* for any liabilities the Group incurs as a result of KFHP's actions.

For the foregoing reasons, the Court GRANTS Defendants' Motion with respect to Count III.

## V.   Count IV

Next, Defendants seek summary judgment on Count IV, which requests equitable relief for Defendants' alleged breach of fiduciary duty.  See FAC ¶¶ 135-140.  Sidlo also states that he is entitled to summary judgment on Count IV, pursuant to Rule 56(f).  Sidlo's Opposition to Defendants' Motion at 1, 20.  Rule 56(f) allows the Court to *sua sponte* grant summary judgment for a nonmovant, so long as "the losing party has reasonable notice that the sufficiency of his or her claim will be in issue." Norse v. City of Santa Cruz, 629 F.3d 966, 971 (9th Cir. 2010) (citation omitted).

The Ninth Circuit has expounded on Rule 56's notice requirement, stating, "Before *sua sponte* summary judgment against a party is proper, that party 'must be given reasonable notice that the sufficiency of his or her claim will be in issue:  Reasonable notice implies adequate time to develop the facts on which the litigant will depend to oppose summary judgment.'"  Albino v. Baca, 747 F.3d 1162, 1176 (9th Cir. 2014) (quoting Buckingham v. United States, 998 F.2d 735, 742 (9th Cir. 1993)).  In concluding that a party moving for summary

judgment had sufficient notice for purposes of Rule 56(f), the
Albino court found the party to have had a "full opportunity" to
gather evidence supporting its claim, and that as the movant for
summary judgment, it was on notice of the need to come forward
with all of the evidence in support of its motion.   Id. at 1177.
Here, KFHP is the moving party with respect to Count IV.   The
Court therefore concludes that it had both a "full and fair
opportunity," as well as the incentive, to come forward with all
of the evidence in support of its motion.

Sidlo argues that Defendants have breached their
fiduciary duty to members by (1) allowing an unwritten policy to
trump an express plan term; (2) failing to read the plan
documents; (3) operating under a conflict of interest; (4)
engaging in a prohibited transaction in violation of 29 U.S.C.
§ 1106(b)(2); and (5) utilizing an exculpatory contract in
violation of 29 U.S.C. § 1110(a).   Sidlo's Opposition to
Defendants' Motion at 14-20.

As noted above, ERISA requires a plan fiduciary to
"discharge his duties with respect to a plan solely in the
interest of the participants and beneficiaries and . . . with
the care, skill, prudence, and diligence under the circumstances
then prevailing that a prudent man acting in a like capacity and
familiar with such matters would use in the conduct of an
enterprise of a like character and with like aims."   29 U.S.C.

- 64 -

§ 1104(a)(1)(B).  A fiduciary must act "for the exclusive purpose of: (i) providing benefits to participants and their beneficiaries; and (ii) defraying reasonable expenses of administering the plan."  29 U.S.C. § 1104(a)(1)(A); Pegram v. Herdrich, 530 U.S. 211, 223-24 (2000).  The fiduciary obligations imposed under ERISA "have the familiar ring of their source in the common law of trusts."  Pegram, 530 U.S. at 224.  "Thus, the common law . . . charges fiduciaries with a duty of loyalty to guarantee beneficiaries' interests . . . ."  Id.

The Court finds that Defendants have not breached any fiduciary duty to Sidlo where KFHP has adjudicated Sidlo's claim consistent with the terms of the plan (leading to the result that Sidlo owes nothing) and taken further steps to protect Sidlo from any attempt by HLF to sue him for his balance bill.  On the contrary, such conduct indicates that Defendants have acted completely in Sidlo's interests.  Additionally, while it is undetermined at this point whether KFHP reimbursed HLF at the proper rate, Defendants note that KFHP paid an amount to HLF that was allegedly above the fair market rate in order "to be conservative and to encourage resolution of a dispute that was impacting members."  Defendants' Motion at 15.

Defendants also make a sound point that KFHP had a fiduciary duty to protect its members from "excessive pricing."  See Defendants' Motion at 13; Defendants' Reply at 7-8.

Defendants cite to Tussey v. ABB, Inc., an Eighth Circuit case in which the court affirmed in part the district court's holding that retirement plan fiduciaries had breached their fiduciary duty by, *inter alia*, failing to both determine whether the plans' recordkeeper's pricing was competitive and adequately leverage the plans' size to reduce the recordkeeper's fees.  746 F.3d 327, 336 (8th Cir. 2014).  Here, consistent with its fiduciary duty, KFHP has applied a policy that might save its members tens of thousands of dollars; investigated alternative medical air transportation options for its members; and attempted to negotiate with HLF regarding reimbursement rates for air ambulance transports.

Sidlo's arguments on this point are unavailing.  Sidlo treats as significant the fact that certain of KFHP's "decision-makers" failed to read the plan documents at issue.  Sidlo's Opposition to Defendants' Motion at 16-17.  However, a plan fiduciary is simply required to act "in accordance with the documents and instruments governing the plan," 29 U.S.C. § 1104(a)(1)(D), and there is every indication that KFHP did just that in directing its third party claims administrator to pay HLF at a level of reimbursement KFHP deemed appropriate.  To be sure, EMI processed Sidlo's claim in accordance with the Inter-Facility Transport Policy, which comports with the plan terms.  Sidlo identifies no case law that requires KFHP's executives or

"decision-makers" to read the plan documents simply because KFHP drafted them.  There is also no authority requiring that the same party that drafts plan documents must process claims.

With respect to Sidlo's allegation that KFHP is operating under a conflict of interest, this is again a factor that courts will normally consider in the context of an abuse of discretion review.  Furthermore, any conflict of interest that may have arisen as a result of KFHP's ongoing dispute with HLF did not inure to the benefit of KFHP, and certainly never harmed Sidlo.  Under KFHP's reading of the plan, Sidlo owes nothing on his claim, and KFHP has offered to protect him and other members from any actions HLF takes to seek further reimbursement from them.

Nor has KFHP engaged in a prohibited transaction in violation of 29 U.S.C. § 1106(b)(2).  This provision states, "A fiduciary with respect to a plan shall not . . . in his individual or in any other capacity act in any transaction involving the plan on behalf of a party (or represent a party) whose interests are adverse to the interests of the plan or the interests of its participants or beneficiaries . . . ."  Id.
Sidlo contends that KFHP's administration of the plan was "deeply affected . . . by its interests in financially helping AMR move into the Hawaii market."  Sidlo's Opposition to Defendants' Motion at 18.  Again, KFHP's benefits determination

- 67 -

has led to the result that Sidlo owes nothing on his claim, and AMR's entry into the market has served only to provide an alternative to HLF's increasing rates, which ultimately benefits members.

Finally, the Court is not convinced by Sidlo's argument that KFHP entered into an exculpatory contract in violation of ERISA.  29 U.S.C. § 1110(a) provides, "[A]ny provision in an agreement or instrument which purports to relieve a fiduciary from responsibility or liability for any responsibility, obligation, or duty under this part shall be void as against public policy."  "If an ERISA fiduciary writes words in an instrument exonerating itself of fiduciary responsibility, the words, even if agreed upon, are generally without effect."  Johnson v. Couturier, 572 F.3d 1067, 1080 (9th Cir. 2009) (citation omitted).

Sidlo argues that KFHP's contract with the outside legal counsel it had retained to provide legal services to Sidlo and other members was an exculpatory contract.  Sidlo's Opposition to Defendants' Motion at 19.  He asserts that this agreement allowed KFHP to evade its responsibility under the Ambulance Services provision and instead offer "indemnity benefits" to members through an outside attorney "contractually bound to only take positions that were not adverse to KFHP." Id. at 19-20.  As previously discussed, KFHP did not modify the

plan by substituting "indemnity benefits" for other "promised benefits," and acted in accordance with the plan terms. Accordingly, KFHP did not enter into an exculpatory contract when it hired outside counsel to protect its members.

For the foregoing reasons, the Court GRANTS Defendants' Motion with respect to Count IV.

## VI.  Count V

Count V seeks equitable estoppel against both KFHP and KPIC.  See FAC ¶¶ 141-146.  Sidlo asserts that Defendants "made a series of material misrepresentations to the Plaintiff and the class concerning their rights under their contracts, including that [sic] stating that they owed no copays, were fully indemnified on all liabilities, and did not owe any payments to their provider, Hawaii Life Flight."  Id. ¶ 142.  According to Sidlo, these statements include various communications to Sidlo in which KFHP advised him not to pay any bills he received from HLF and offered to retain and pay for outside legal services in order to protect his interests, see Exs. 7, 9 to Decl. of Toby Sidlo; a communication stating that HLF's conduct was illegal, Ex. 7 to Decl. of Toby Sidlo; and a letter to the Insurance Commissioner in which Kaiser Permanente Vice President Shawn Mehta wrote that "Kaiser wishes to clarify that it will also indemnify all impacted Members from HLF's baseless claims," Ex. 12 to Decl. of Toby Sidlo (emphasis in original).

In order to recover benefits under a theory of equitable estoppel, Sidlo must establish the traditional elements of equitable estoppel, as well as three additional requirements.  Gabriel v. Alaska Elec. Pension Fund, 773 F.3d 945, 955-56 (9th Cir. 2014).  The traditional elements are as follows:  "(1) the party to be estopped must know the facts; (2) he must intend that his conduct shall be acted on or must so act that the party asserting the estoppel has a right to believe it is so intended; (3) the latter must be ignorant of the true facts; and (4) he must rely on the former's conduct to his injury."  Id. at 955 (quoting Greany v. W. Farm Bureau Life Ins. Co., 973 F.2d 812, 821 (9th Cir. 1992)).  The first three elements essentially require the party asserting estoppel to establish that Defendants made a material misrepresentation. See Spink v. Lockheed Corp., 125 F.3d 1257, 1262 (9th Cir. 1997).

The three additional requirements a party must establish in the ERISA context are:  "(1) extraordinary circumstances; (2) that the provisions of the plan at issue were ambiguous such that reasonable persons could disagree as to their meaning or effect; and (3) that the representations made about the plan were an interpretation of the plan, not an amendment or modification of the plan."  Gabriel, 773 F.3d at 957 (quotation marks omitted).

Sidlo's equitable estoppel claim ultimately fails because he is unable to establish that he relied on any of the alleged misrepresentations to his detriment.  He states that when KFHP informed members that HLF's actions were "illegal," they could be more inclined to disregard their bills.  Sidlo's Opposition to Defendants' Motion at 21.  However, aside from the letters HLF sent to Sidlo stating that KFHP had failed to fully reimburse HLF, no bills or other requests for payment appear to have been sent directly to Sidlo.  The Court doubts that any such communications or bills exist of which the Court is unaware, because Sidlo has teamed up with HLF to bring the instant litigation by signing the JLA.

Sidlo also states that when KFHP offered to retain an attorney for Sidlo and others, it failed to inform members that the attorney "could not truly advise them about any potential claims they had against Defendant KFHP, or he would be in breach of his legal services contract or worse."  Id. at 21-22.  Yet because Sidlo declined KFHP's offer of counsel and is instead aligning himself with HLF, he did not detrimentally rely on this statement.

Finally, Sidlo asserts that because KFHP failed "to issue ERISA-complaint [sic] letters under § 503, 29 U.S.C. § 1133, the Members had no idea about their appeal deadlines or could possibly fail to timely pursue their claims against KFHP."

Id. at 22.   As explained above, Sidlo did not suffer an adverse benefit determination and therefore had no right to an appeal.[15] Furthermore, if his concern was a lack of information regarding appeal deadlines, he had simply to look at his Member Guide or EOB, both of which outlined the appropriate process for filing an appeal.   To the extent Sidlo argues that KFHP's alleged misrepresentations could have caused him to forgo his federal right to recover benefits pursuant to 29 U.S.C. 1132(a)(1)(B), see id. at 22-23, such argument is ludicrous because that is exactly the suit before this Court.

For the foregoing reasons, the Court GRANTS Defendants' Motion with respect to Count V.

## VII. Count VI

Finally, Defendants seek summary judgment on Count VI, which seeks equitable indemnification from Defendants "for the full unpaid balances owed by each class member."   See FAC ¶¶ 147-49.   Sidlo also now seeks summary judgment on this Count

---

[15] Nor did Sidlo lose the benefit of his bargain, an injury in fact the Court considered for purposes of its standing analysis. See supra Discussion Section I; see also North Cyprus, 781 F.3d at 191 ("When considering whether a plaintiff has Article III standing, a federal court must assume arguendo the merits of his or her legal claim.") (citation and brackets omitted).   To be sure, Sidlo's Group employer bargained on Sidlo's behalf for payment of his benefits claims according to the terms of his health plan, which, consistent with Section 10.F of the Service Agreement and as stated in the EMI claims manual, require that payment for inter-facility medical air transport be made according to the Inter-Facility Transport Policy.

pursuant to Rule 56(f).  Sidlo's Opposition to Defendants' Motion at 1, 28.  Sidlo alleges that "Defendants have promised, repeatedly, that they are legally responsible for the payment of all sums owed by the Plaintiff and the class for all amounts due and owing to their provider, Hawaii Life Flight."  FAC ¶ 148.

Generally speaking, "a cause of action for indemnity does not accrue until the indemnitee has suffered a loss." Barron v. United States, 654 F.2d 644, 650 (9th Cir. 1981).  A claim of equitable indemnity can be based on "(1) an express contract; (2) a contract implied-in-fact; or (3) equitable concepts arising from the tort theory of indemnity, often referred to as a contract implied-in-law."  Brewer Envtl. Indus., LLC v. Matson Terminals, Inc., Civ. No. 10-00221 LEK-KSC, 2011 WL 1637323, at *13 (D. Haw. Apr. 28, 2011).  Further, in order to succeed on an equitable indemnity claim a party "must plead and prove that: (1) he or she has discharged a legal obligation owed to a third party; (2) the defendant was also liable to the third party; and (3) as between the claimant and the defendant, the obligation ought to be discharged by the latter."  Id.

The Court first observes that, of the two offers of indemnification KFHP made directly to Sidlo, Sidlo accepted neither, nor did he discharge any legal obligation with respect to either offer.  In a letter dated December 15, 2014, KFHP

- 73 -

stated, "If you have made a payment to Hawaii Life Flight in response to its additional letters or phone calls . . . we will reimburse you for verified payment amounts." Ex. H to Decl. of Michelle Scannell, ECF No. 325-16. There is no indication that Sidlo made any further payments to HLF or availed himself of KFHP's offer.

Additionally, by letter dated May 4, 2015, KFHP informed Sidlo it had arranged for him to be represented by outside legal counsel to protect him "against Hawaii Life Flight's efforts to collect the balance of its bill for air ambulance transport services." Ex. B to Decl. of Ingrid Mealer, ECF No. 325-3. However, Sidlo rejected this offer and instead signed a JLA with HLF whereby HLF engaged and agreed to pay for Sidlo's attorneys in the instant lawsuit. Additionally, HLF has so far made no effort to collect the balance of Sidlo's bill from him, and Sidlo has indeed made no such payments.

On the other hand, in his July 30, 2015 letter to the Insurance Commissioner, Kaiser Permanente Vice President Shawn Mehta wrote that "Kaiser wishes to clarify that it will also indemnify all impacted Members from HLF's baseless claims," Ex. 12 to Decl. of Toby Sidlo (emphasis in original). A copy of this letter was forwarded to Sidlo, albeit after he had commenced the instant lawsuit. KFHP has also stated in briefing and during hearings that "it stands ready to defend its Members"

should HLF sue them for the remainder of their bills.  See, e.g., KFHP's Opposition at 15 n.8; Transcript of Proceedings at 29-30, ECF No. 421 ("THE COURT:  So you have agreed to indemnify your members?  MS. SLAUGHT:  Yes.  Should Hawaii Life Flight go out and sue them, yes, the members will be indemnified.").  The Court recognizes that "the arguments and statements of counsel 'are not evidence and do not create issues of material fact capable of defeating an otherwise valid motion for summary judgment.'"  Barcamerica Int'l USA Trust v. Tyfield Imps., Inc., 289 F.3d 589, 593 n.4 (9th Cir. 2002) (citation omitted). However, these statements support the notion that KFHP intends to defend and indemnify its members in a potential lawsuit brought by HLF, and has represented the same to its members.

Because any viable claim for indemnity relates to potential future litigation, it is necessary for the Court to determine whether this issue is ripe for adjudication.  See S. Pac. Transp. Co. v. City of L.A., 922 F.2d 498, 502 (9th Cir. 1990) (stating that ripeness "may be raised sua sponte if not raised by the parties").  "The Supreme Court has reasoned that ripeness is peculiarly a question of timing."  18 Unnamed John Smith Prisoners v. Meese, 871 F.2d 881, 883 (9th Cir. 1989). "The ripeness doctrine prevents courts, through avoidance of premature adjudication, from entanglement in theoretical or abstract disagreements that do not yet have a concrete impact on

the parties." Id.  However, "[o]ne does not have to await the consummation of threatened injury to obtain preventive relief. If the injury is *certainly impending*, that is enough."  Thomas v. Union Carbide Agric. Prods. Co., 473 U.S. 568, 581 (1985) (emphasis added) (citation omitted).  But where a plaintiff's claim involves "contingent future events that may not occur as anticipated, or indeed not occur at all," the claim is not ripe for judicial review because "the issues raised require further factual development."  18 Unnamed John Smith Prisoners, 871 F.2d at 883 (quoting Thomas, 473 U.S. at 581).

Where a claim is not yet ripe for review, a court must dismiss that claim *sua sponte*.  S. Pacific, 922 F.2d at 502 ("Ripeness is more than a mere procedural question; it is determinative of jurisdiction. If a claim is unripe, federal courts lack subject matter jurisdiction and the complaint must be dismissed."); see also Chapman v. Pier 1 Imports (U.S.) Inc., 631 F.3d 939, 954 (9th Cir. 2011) (stating that even when a party fails to move to dismiss a claim under Rule 12(b)(1), "[f]ederal courts are required sua sponte to examine jurisdictional issues") (citation omitted); Higa v. Earp, Civ. No. 08-00411 JMS-LEK, 2009 WL 1402686, at *2 (D. Haw. May 15, 2009) ("The question of ripeness, like other challenges to a court's subject matter jurisdiction, is treated as a motion to dismiss under Rule 12(b)(1).") (citation omitted).

- 76 -

Ultimately, Sidlo may have a proper claim to the extent he seeks to avail himself of KFHP's alleged offer to indemnify him in any future lawsuit brought by HLF.  However, neither has Sidlo been sued, nor has he made any payment to HLF or discharged any other legal obligation to HLF.  Accordingly, no such claim for indemnity on this theory is ripe for adjudication at present.

For the foregoing reasons, the Court *sua sponte* DISMISSES without prejudice Sidlo's Count VI, because such claim is not yet ripe for adjudication.  The Court accordingly DENIES Defendants' Motion with respect to Count VI.  See <u>18 Unnamed John Smith Prisoners</u>, 871 F.2d at 883 (vacating the district court's grant of summary judgment and remanding case to the district court with instructions to dismiss the case without prejudice, where the court determined that the action was not ripe for judicial review).

## VIII.    Whether KPIC is a Proper Party

Because the Court has granted summary judgment to Defendants on Counts I through V and has *sua sponte* dismissed Count VI, the Court finds that the question whether KPIC is a proper party to this suit is now moot.

## CONCLUSION

For the foregoing reasons, the Court DENIES Sidlo's Motion for Partial Summary Judgment Against Defendant Kaiser

Foundation Health Plan, Inc.; GRANTS KFHP's Motion for Summary Judgment, or in the Alternative, Partial Summary Judgment; GRANTS in part and DENIES in part Defendants KFHP and KPIC's Supplemental Motion for Summary Judgment, or in the Alternative, Partial Summary Judgment; and *sua sponte* DISMISSES Count VI without prejudice.

IT IS SO ORDERED.

DATED:  Honolulu, Hawai'i, October 31, 2016.

_____
Alan C. Kay
Sr. United States District Judge

Sidlo v. Kaiser Permanente Insurance Company, et al., Civ. No. 15-00269 ACK-KSC, Order Denying Plaintiff's Motion for Partial Summary Judgment, Granting Defendant's Motion for Summary Judgment, or in the Alternative, Partial Summary Judgment, Granting in Part and Denying in Part Defendants' Supplemental Motion for Summary Judgment, or in the Alternative, Partial Summary Judgment, and *Sua Sponte* Dismissing Count VI Without Prejudice.