IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF HAWAII

_____

```
TOBY SIDLO, on behalf of himself,  )
and all others similarly situated, )
                                   )
          Plaintiff(s),            )
                                   )
vs.                                ) Civ. No. 16-00073 ACK-KSC
                                   ) [CONSOLIDATED]
KAISER PERMANENTE INSURANCE        )
COMPANY, a California non-profit   )
corporation, KAISER FOUNDATION     )
HEALTH PLAN, INC., a foreign non-  )
profit corporation, and DOE        )
DEFENDANTS 1-50,                   )
                                   )
          Defendants.              )
_____)
                                   )
KAISER FOUNDATION HEALTH PLAN,     )
INC., a foreign non-profit         )
corporation,                       )
                                   )
          Plaintiff,               )
                                   )
vs.                                )
                                   )
HAWAII LIFE FLIGHT CORPORATION, a  )
Hawaii corporation, and AIR        )
MEDICAL RESOURCE GROUP, INC., a    )
Utah Corporation,                  )
                                   )
          Defendants.              )
_____)
                                   )
HAWAII LIFE FLIGHT CORPORATION, a  )
Hawaii corporation,                )
                                   )
          Counterclaim Plaintiff,  )
                                   )
vs.                                )
                                   )
KAISER FOUNDATION HEALTH PLAN,     )
INC., a foreign non-profit         )
corporation,                       )
```

)
        **Counterclaim Defendant.**  )

_____ )

## ORDER DENYING KAISER FOUNDATION HEALTH PLAN INC.'S MOTION FOR SUMMARY JUDGMENT AND GRANTING SUMMARY JUDGMENT IN FAVOR OF HAWAII LIFE FLIGHT CORPORATION AND AIR MEDICAL RESOURCE GROUP, INC. PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 56(F) AND LOCAL RULE 56.1(I)

For the reasons set forth below, the Court DENIES Kaiser Foundation Health Plan, Inc.'s Motion for Summary Judgment Against Hawaii Life Flight and Air Medical Resource Group.  ECF No. 248.[1]  Further, because the Court finds as a matter of law that members may assign their rights under the health plans to their medical providers without violating the plans' anti-assignment provision, the Court GRANTS summary judgment to that limited extent in favor of Hawaii Life Flight Corporation and Air Medical Resource Group, Inc. pursuant to Federal Rule of Civil Procedure 56(f) and Local Rule 56.1(i).

## PROCEDURAL BACKGROUND[2]

On February 18, 2016, Kaiser Foundation Health Plan, Inc. ("KFHP") filed a Complaint against Hawaii Life Flight

_____

[1] Unless otherwise noted, all Electronic Case File ("ECF") citations refer to the civil docket for Sidlo v. Kaiser Permanente Insurance Company, et al., Civ. No. 15-00269 ACK-KSC, which has been consolidated with the instant action for purposes of discovery.  See Order Consolidating Cases.  ECF No. 85.

[2] The Court incorporates by reference the procedural background as laid out in the Sidlo Summary Judgment Order, filed October 31, 2016.  See ECF No. 487.

- 2 -

Corporation ("HLF") and Air Medical Resource Group, Inc. ("AMRG").  KFHP's Compl. Against HLF and AMRG for Violation of 29 U.S.C. § 1132(a)(3) ("Complaint"), D. Haw., Civ. No. 16-00073 ACK-KSC, ECF No. 1.  KFHP's claim arises out of the events underlying and comprising consolidated lawsuit Sidlo v. Kaiser Permanente Insurance Company, et al., Civ. No. 15-00269 ACK-KSC. In its Complaint, KFHP alleges HLF and AMRG have violated and attempted to violate an anti-assignment provision contained in KFHP's health plans within Hawaii, which are governed by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 et seq.  Complaint ¶¶ 49-56.  KFHP alleges that HLF and/or AMRG "have repeatedly attempted to procure broad assignments of members of the Plans' rights, interest, claims for money due, benefits and/or obligations under the Plans, in violation of the anti-assignment provision."  Id. ¶ 33.  More specifically, KFHP asserts that the Sidlo litigation has been brought by HLF and/or AMRG in Sidlo's name, which constitutes a violation of the anti-assignment provision.  Id. ¶ 35.  HLF agrees that it is participating in the litigation in Sidlo's name.  See Opposition at 2 ("Kaiser and HLF agree that the subject Kaiser members have assigned to HLF, and HLF has accepted, the members' right to enforce Kaiser's obligation to pay HLF for the services rendered.").

HLF and AMRG filed an Answer to the Complaint on April 14, 2016.  ECF No. 102.  That same day, HLF filed a Counterclaim against KFHP.  HLF's Countercl. Against KFHP ("Counterclaim"), ECF No. 103.  HLF's Counterclaim asserts four counts:  1) unfair competition in violation of Hawaii Revised Statutes § 480-2; 2) tortious interference with contract; 3) defamation; and 4) trade libel/disparagement.  Id. ¶¶ 23-49.  HLF asserts that KFHP, "in connection with its health insurance services, has made written and oral demands that hospitals arrange for emergency transportation of patients exclusively through or as designated by KFHP, even where those hospitals have contracts with HLF and contrary to the federal law that exclusively provides that emergency patient transport is arranged by the treating physician."  Id. ¶ 24.  Further, HLF contends that KFHP has sent letters to patients that received air ambulance services from HLF, which letters contain "numerous falsehoods, misrepresentations, and otherwise disparaging and defamatory statements" regarding HLF.  Id. ¶ 25.

On July 18, 2016, KFHP filed its Motion for Summary Judgment Against HLF and AMRG, along with a Memorandum in Support of Motion ("Motion"), ECF No. 248-1, and a Concise Statement of Facts in Support of Motion for Summary Judgment ("KFHP'S CSF"), ECF No. 249.  In its Motion, KFHP requests that the Court issue an order declaring that KFHP's health plans

contain an enforceable anti-assignment provision; that KFHP has not waived the anti-assignment provision; and that HLF and AMRG "cannot enforce assignments against KFHP through, among other things, the Sidlo Litigation and any other use of an assignment to stand in the shoes of Members." Motion at 25.

On October 17, 2016, HLF and AMRG filed an Opposition to KFHP's Motion ("Opposition"), ECF No. 474, as well as a Response to KFHP's CSF, which included a Concise Statement of Facts in Opposition to KFHP's CSF ("Defs.' CSF"), ECF No. 476. In their Opposition, HLF and AMRG request that summary judgment be granted in their favor pursuant to Local Rule 56.1(i). Id. at 1. KFHP filed a Reply in Support of Motion ("Reply") on October 24, 2016. ECF No. 478.

The Court held a hearing regarding KFHP's Motion on November 7, 2016. During the hearing, the Court notified KFHP that it was considering granting summary judgment on KFHP's Complaint in favor of HLF and AMRG.

## FACTUAL BACKGROUND[3]

KFHP serves as a claim fiduciary of certain group health plans within the State of Hawaii that are governed by ERISA. KFHP's CSF ¶ 1. At all relevant times, Consolidated

---

[3] The Court incorporates by reference the factual background as laid out in the Sidlo Summary Judgment Order, filed October 31, 2016. See ECF No. 487.

Plaintiff Toby Sidlo and a group of proposed class members were participants in or beneficiaries of these plans. Id. ¶ 2; Pl. Toby Sidlo's First Am. Class Action Compl. ("FAC") ¶¶ 3, 11, ECF No. 227. The documents relevant to the health plans that the court has considered with respect to this Motion include the Group Medical and Hospital Service Agreement ("Service Agreement") and the Member Handbook.[4] See Ex. A to Decl. of May Goya at 1, ECF No. 249-2; Ex. B to Decl. of Jan Kagehiro at 15, ECF No. 249-4.

During the relevant time period, HLF provided medical air transportation services to certain members of KFHP's health plans and submitted claims to KFHP for reimbursement of those services. Complaint ¶ 7. AMRG shares certain corporate officers with HLF and holds a FAA Part 135 Certificate, under which certain aircraft operate. Answer ¶¶ 7-8. HLF is one of at least nine medical transportation companies affiliated with AMRG. Ex. Q to Decl. of Michelle Scannell at 36:5-37:22, ECF No. 325-26.

---

[4] HLF and AMRG state that "Kaiser's members' obligations and benefits are set forth in the Service Agreement and Benefit Schedule, not the Member Handbook." Defs.' CSF ¶ 38. However, HLF and AMRG do not appear to deny that the Member Handbook is a plan document.

## I.   The <u>Sidlo</u> Litigation

In the <u>Sidlo</u> litigation, KFHP member Toby Sidlo alleged that KFHP and Kaiser Permanente Insurance Company ("KPIC") violated ERISA by underpaying or under-reimbursing claims for medical air transportation services provided to plan participants or beneficiaries by HLF since 2013.   FAC ¶¶ 55-56. In its Complaint in this action, KFHP alleges that the <u>Sidlo</u> litigation was "brought by [HLF and AMRG], or either of them, in Mr. Sidlo's name, pursuant to a purported assignment, in violation of the anti-assignment provision of Mr. Sidlo's Plan." Complaint ¶ 35.

The Court issued a Summary Judgment Order in the <u>Sidlo</u> litigation on October 31, 2016.   In the Order, the Court granted summary judgment to KFHP on Sidlo's Count I because it determined that KFHP properly applied its "Inter-Facility Transport Policy" when processing Sidlo's benefits claim.[5]   The Court also granted summary judgment in favor of KFHP and KPIC on Sidlo's Counts II through V.   As to Sidlo's Count VI, which sought a determination that KFHP and KPIC "are liable for the

---

[5] While the Court held that Sidlo's claim was properly considered and ruled upon in accordance with the Inter-Facility Transport Policy, the Court also noted that an issue remains as to whether KFHP reimbursed HLF at the proper rate.   <u>Sidlo</u> Summary Judgment Order at 62 n.14.   However, that issue was not brought before the Court in the <u>Sidlo</u> litigation, nor has it been brought before the Court in the instant action.

full unpaid balances owed by each class member under the doctrine of equitable indemnification as well as all other indemnity requirements imposed by law," the Court dismissed the claim without prejudice after determining that it was not yet ripe for adjudication.

## II.  Appeal to Insurance Commissioner

In addition to the Sidlo litigation, KFHP asserts that HLF has used KFHP members such as Sidlo to "file HLF-drafted complaints with the Insurance Commissioner in an attempt to obtain further payment from KFHP."  Motion at 15.  In a letter dated May 22, 2015, Sidlo, through HLF, filed a complaint with the Hawaii Insurance Commissioner ("Insurance Commissioner"), requesting that the Insurance Commissioner review Sidlo's claim and require that KFHP pay the remaining amount Sidlo claimed KFHP owed under his health plan.  Ex. S to Decl. of Michelle Scannell, ECF No. 249-22.  At present, there does not appear to be an active matter before the Insurance Commissioner regarding Sidlo's complaint, as Sidlo never responded to a letter from the Insurance Commissioner stating, "In the event we do not hear from you by September 7, 2015, we will presume that this matter has been resolved to your satisfaction and this file will be closed and no further action taken."  See Exs. AA, BB to Decl. of Michelle Scannell, ECF Nos. 325-36, 325-37.

### III.   The Relevant Plan Documents

Sidlo's Service Agreement lists KFHP as "a fiduciary to review claims under [the] Service Agreement," and indicates that KFHP "has the authority to review claims and determine whether a Member is entitled to the benefits of [the] Service Agreement."  Ex. A to Decl. of May Goya at 1.  It also includes an anti-assignment provision that states:

> Neither this Service Agreement nor any of the rights, interest, claims for money due, benefits or obligations hereunder shall be assigned by Group or Member without the prior written consent of Health Plan.

Id. at 20.  Further, Section 10.I of the Service Agreement, entitled "No Waiver," provides, "Failure by [KFHP] to enforce any term or condition of this Service Agreement will not be considered a waiver or an impairment of [KFHP's] right thereafter to require strict performance of any term or condition by Group or Members."  Id.

The Member Handbook provides information regarding, among other things, filing a claim, reimbursement for a claim, and filing an appeal.  With regards to filing a claim, the Handbook states, "You or the provider should submit a claim form, including itemized statements describing the services received."  Ex. B to Decl. of Jan Kagehiro at 15.  The Handbook then provides, "If approved, reimbursement is made to providers according to your health plan benefits."  Id.  With respect to

appeals, the Handbook states, "If we deny your request for payment or coverage, you have the right to file an appeal and ask that we reconsider our decision . . . . You may appoint someone to file the appeal on your behalf.  If you choose to appoint a representative, you must name this person in writing and state that he or she may file the appeal on your behalf." Id. at 16.

### IV.  HLF's Assignment Forms

HLF requires its patients to sign certain forms containing assignment language prior to providing medical air transport.  Opposition at 4.  Its Standard Ambulance Signature Form states, in relevant part:

> I authorize the submission of a claim for payment and request that payment of authorized Medicare, Medicaid or other insurance benefits to [sic] be made on my behalf directly to Hawaii Life Flight.  I assign Hawaii Life Flight all right, title and interest in all benefit plans from which my dependents or I are entitled to recover and agree to immediately remit and assign any payment for the services provided by Hawaii Life Flight.

Ex. K to Decl. of Michelle Scannell, ECF No. 249-14.  Prior to his transport Sidlo signed a Standard Ambulance Signature Form, which Sidlo, HLF, and AMRG admit is an assignment.  KFHP's CSF ¶ 12; Defs.' CSF ¶ 12.

Similarly, HLF's Billing and Consent to Transport Form provides, in relevant part:

> I authorize the submission of a claim for
> payment and request that payment of
> authorized Medicare, Medicaid or other
> insurance benefits to [sic] be made on my
> behalf directly to Hawaii Life Flight. I
> assign Hawaii Life Flight all right, title
> and interest in all benefit plans from which
> my dependents or I are entitled to recover,
> and agree to immediately remit and assign
> any payment for the services provided by
> Hawaii Life Flight.

Ex. N to Decl. of Michelle Scannell, ECF No. 249-17. Again, the

parties agree that this form constitutes an assignment. KFHP's

CSF ¶¶ 18-19; Defs.' CSF ¶¶ 18-19. HLF contends that it uses

these forms for all patients – not just Sidlo and other KFHP

members. Opposition at 5.

Finally, HLF uses a Patient First Agreement, which

states, in relevant part:

> 2. Excepting my obligation for my copay and
> deductible, in consideration for the Company
> waiving the right to collect from me the
> Balance Bill that I/We owe to the Company
> for the Transport, I/We agree to assist the
> Company in pursuing all claims for
> reimbursement under my insurance
> policy/plan, including but not limited to,
> signing required documents, assisting with
> an appeal and filing a lawsuit in my name
> under ERISA, or filing a lawsuit in my name
> under other laws/actions, in order to compel
> payment under the terms of my insurance
> policy/plan.

> 3. I/We understand and agree that the
> Company will select my attorney and that the
> Company will have financial responsibility
> to pay all expenses, court costs and
> attorney fees that they incur in attempting
> to collect money from my insurance company.

> 4.    I/We understand and agree that any amounts collected by the Company (including an award of damages, costs and attorney fees) will belong to the Company to recompense/reimburse the Company for their time, costs, for the payment of attorney fees and for other expenses.
>
> 5.    I/We understand and agree that the Company, in its sole discretion, has the right to determine and pursue the amount that they believe should be paid under the policy.

Ex. O to Decl. of Michelle Scannell, ECF No. 249-18.  HLF sent the Patient First Agreement to nine individuals who received air transportation services, and two such individuals signed the agreement.  KFHP's CSF ¶ 21; Defs.' CSF ¶ 21.

## V.    HLF's Joint Litigation Agreement with Sidlo

On July 15, 2015, Sidlo and HLF entered into a Joint Litigation Agreement ("JLA") with respect to the Sidlo litigation.  Ex. Q to Decl. of Michelle Scannell, ECF No. 249-20.  The JLA states that HLF has engaged counsel to represent both Sidlo and HLF in the Sidlo litigation, and that HLF agrees to pay all attorneys' fees and costs related to the lawsuit. Id. at 1-2, 4.  The JLA further provides that any recovery will go to HLF, both to repay it for its attorneys' fees and costs, as well as to satisfy any of its outstanding invoices.  Id. at 4.  HLF also "agrees to limit any liability by [Sidlo] to the amount recovered in Lawsuit after [Sidlo] has paid any co-pay or

out-of-pocket expenses as set out in the Plan." Id. The JLA states that Sidlo and HLF "agree to waive any conflict of interest in the Attorneys representing the interests of both HLF and [Sidlo] as well as other clients similarly situated as [Sidlo]." Id. at 1.

KFHP contends that the JLA operates as an assignment of rights from Sidlo to HLF, a fact which HLF does not dispute. See Reply at 3.

### VI. HICF 1500 Form and KFHP's Contract with EMI

When submitting claims to KFHP, HLF fills out KFHP's Health Insurance Claim Form ("HICF") 1500. Defs.' CSF ¶ 43. Box 13 of the form reads, "INSURED'S OR AUTHORIZED PERSON'S SIGNATURE. I authorize payment of medical benefits to the undersigned physician or supplier for services described below." Ex. 10 to Decl. of Andrew J. Lautenbach, ECF No. 476-12. Box 27 states, "ACCEPT ASSIGNMENT?" and has boxes for "YES" and "NO." Id. The HICF 1500 form HLF submitted in connection with Sidlo's claim indicates "SIGNATURE ON FILE" for Box 13, and checks "YES" for Box 27. Id.

Finally, KFHP has an Administrative Services Agreement with its third party claims administrator for transportation claims, Employers Mutual, Inc. ("EMI"). See Ex. 12 to Decl. of Andrew J. Lautenbach, ECF No. 476-14. Article 2 of the agreement outlines the claims processing services EMI has

contracted to provide for KFHP, and states that "EMI shall promptly . . . receive, process, adjudicate, and (if appropriate) pay, in accordance with the terms of the Membership Agreements, all claims submitted by or on behalf of Members with respect to medical transportation services and authorized transportation claims provided by Health Plans' contracted medical transportation providers and other air and land transportation providers identified from time to time by Health Plans . . . ."   Id. at 5.   Article 2.1.C further provides that EMI's services shall include "[v]erify[ing] the validity of assignments of benefits by Members."   Id.

## STANDARD

Summary judgment is proper where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.   Fed. R. Civ. P. 56(a).   Federal Rule of Civil Procedure ("Rule") 56(a) mandates summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial."   Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); see also Broussard v. Univ. of Cal. at Berkeley, 192 F.3d 1252, 1258 (9th Cir. 1999).

"A party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and of

identifying those portions of the pleadings and discovery responses that demonstrate the absence of a genuine issue of material fact." Soremekun v. Thrifty Payless, Inc., 509 F.3d 978, 984 (9th Cir. 2007) (citing Celotex, 477 U.S. at 323); see also Jespersen v. Harrah's Operating Co., 392 F.3d 1076, 1079 (9th Cir. 2004). "When the moving party has carried its burden under Rule 56[(a)] its opponent must do more than simply show that there is some metaphysical doubt as to the material facts [and] come forward with specific facts showing that there is a genuine issue for trial." Matsushita Elec. Indus. Co. v. Zenith Radio, 475 U.S. 574, 586–87 (1986) (citation and internal quotation marks omitted); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986) (stating that a party cannot "rest upon the mere allegations or denials of his pleading" in opposing summary judgment).

"An issue is 'genuine' only if there is a sufficient evidentiary basis on which a reasonable fact finder could find for the nonmoving party, and a dispute is 'material' only if it could affect the outcome of the suit under the governing law." In re Barboza, 545 F.3d 702, 707 (9th Cir. 2008) (citing Anderson, 477 U.S. at 248). When considering the evidence on a motion for summary judgment, the court must draw all reasonable inferences on behalf of the nonmoving party. Matsushita Elec. Indus. Co., 475 U.S. at 587; see also Posey v. Lake Pend Oreille

<u>Sch. Dist. No. 84</u>, 546 F.3d 1121, 1126 (9th Cir. 2008) (stating
that "the evidence of [the nonmovant] is to be believed, and all
justifiable inferences are to be drawn in his favor").

Furthermore, Rule 56(f) allows the Court to grant
summary judgment for a nonmovant, so long as "the losing party
has reasonable notice that the sufficiency of his or her claim
will be in issue." <u>Norse v. City of Santa Cruz</u>, 629 F.3d 966,
971 (9th Cir. 2010) (citation omitted).  The Ninth Circuit has
expounded on Rule 56's notice requirement, stating, "Reasonable
notice implies adequate time to develop the facts on which the
litigant will depend to oppose summary judgment.'" <u>Albino v.</u>
<u>Baca</u>, 747 F.3d 1162, 1176 (9th Cir. 2014) (quoting <u>Buckingham v.</u>
<u>United States</u>, 998 F.2d 735, 742 (9th Cir. 1993)) (concluding
that a party moving for summary judgment had sufficient notice
for purposes of Rule 56(f), because as the movant for summary
judgment, the party had a "full opportunity" to gather evidence
supporting its claim and was on notice of the need to come
forward with all of the evidence in support of its motion).

Similarly, Local Rule 56.1(i) allows the Court to
grant summary judgment in favor of a nonmoving party.  The rule
states:

> If a party moves for summary judgment and
> the record establishes as a matter of law
> that another party is entitled to summary
> judgment against the moving party, the
> court, in the court's discretion, may enter

> summary judgment against the moving party
> after providing that party with oral or
> written notice and an opportunity to be
> heard.

In order to obtain summary judgment pursuant to Local Rule 56.1(i), a nonmoving party must establish that there is "no evidence from which a jury could reasonably decide" the relevant claim in the moving party's favor.  See Pac. Radiation Oncology, LLC v. Queen's Med. Ctr., Civ. No. 12-00064 LEK-KSC, 2014 WL 6749117, at *13 (D. Haw. Nov. 30, 2014) (citation omitted).

## DISCUSSION

### I.   KFHP's Motion for Summary Judgment

In its Motion, KFHP argues that HLF has taken an assignment of rights from Sidlo in violation of an anti-assignment provision in KFHP's health plans.  Motion at 1. Accordingly, KFHP seeks an order from this Court not only enjoining HLF's participation in the Sidlo litigation,[6] but also permanently enjoining HLF's and AMRG's solicitation or use of any forms that purport to effect an assignment of rights from KFHP's members to HLF or AMRG.  Id. at 22-25.  HLF and AMRG argue in their Opposition that HLF has procured a valid

---

[6] To the extent KFHP requests an order enjoining the Sidlo litigation in its entirety, the Court notes that this would be inappropriate because Sidlo is not a party to this action and is therefore unable to defend against this request.  However, the Court also notes that it has in effect dismissed the Sidlo litigation in its summary judgment Order dated October 31, 2016.

assignment of rights from Sidlo, and that neither an order enjoining its participation in the Sidlo litigation nor a permanent injunction precluding future assignments is appropriate.  Opposition at 2-4.  HLF and AMRG also request that summary judgment on KFHP's claim be granted in their favor pursuant to Local Rule 56.1(i).[7]

"ERISA provides for a federal cause of action for civil claims aimed at enforcing the provisions of an ERISA plan."  Reynolds Metals Co. v. Ellis, 202 F.3d 1246, 1247 (9th Cir. 2000) (citing 29 U.S.C. § 1132(e)(1)).  In order to have standing to bring such a claim, "a plaintiff must fall within one of ERISA's nine specific civil enforcement provisions, each of which details who may bring suit and what remedies are available."  Id.  "ERISA's civil enforcement provision, 29 U.S.C. § 1132(a) identifies only plan participants, beneficiaries, fiduciaries, and the Secretary of Labor as persons empowered to bring a civil action."  Spinedex Physical Therapy USA Inc. v. United Healthcare of Ariz., Inc., 770 F.3d 1282, 1288-89 (9th Cir. 2014) (brackets and quotation marks omitted).

Nevertheless, the Ninth Circuit has held that a beneficiary may assign his rights under a health care plan to

---

[7] The Court may also enter summary judgment for a nonmoving party pursuant to Rule 56(f).

his medical provider, which in turn has standing to assert the beneficiary's claims pursuant to 29 U.S.C. § 1132(a).  Misic v. Bldg. Serv. Emps. Health & Welfare Trust, 789 F.2d 1374, 1379 (9th Cir. 1986).  In Misic, the court noted that "[a]ssignment of trust monies to health care providers results in precisely the benefit the trust is designed to provide and [ERISA] is designed to protect."  Id. at 1377.  However, "absent a valid assignment enforceable under the plan, there can be no derivative standing."  Brand Tarzana Surgical Inst., Inc. v. Int'l Longshore & Warehouse Union-Pac. Maritime Ass'n Welfare Plan, Case No. CV 14-3191 FMO (AGRx), 2016 WL 3480782, at *6 (C.D. Cal. Mar. 8, 2016) (citing Davidowitz v. Delta Dental Plan of Cal., Inc., 946 F.2d 1476, 1480-81 (9th Cir. 1991)); see also Davidowitz, 946 F.2d at 1481 ("Congress intended not to mandate assignability, but intended instead to allow the free marketplace to work out such competitive, cost effective, medical expense reducing structures as might evolve.") (emphasis in original).

Thus, while the Ninth Circuit recognizes the importance and utility of allowing a beneficiary to assign his rights to a medical provider, the court has also held that "anti-assignment clauses in ERISA plans are valid and enforceable."  Spinedex, 770 F.3d at 1296; Davidowitz, 946 F.2d at 1481 ("ERISA welfare plan payments are not assignable in the

face of an express non-assignment clause in the plan."); see also id. at 1478 ("As a general rule of law, where the parties' intent is clear, courts will enforce non-assignment provisions.").

Because HLF and AMRG "agree that the subject [KFHP] members have assigned to HLF, and HLF has accepted, the members' right to enforce [KFHP's] obligation to pay HLF for the services rendered," Opposition at 2, the Court must determine whether the health plans contain a valid anti-assignment provision enforceable against HLF and AMRG.  As KFHP points out, courts in this circuit have precluded providers from suing on claims barred by valid anti-assignment provisions.  See, e.g., Spinedex, 770 F.3d at 1296-97; Brand Tarzana, 2016 WL 3480782, at *11.

For their part, HLF and AMRG argue that "[t]here is a clear distinction between assigning a claim to an unrelated third-party (for example, a creditor that was not the provider of a covered medical service) versus assigning a claim to a provider that provided covered services."  Opposition at 17. HLF and AMRG cite to Fifth Circuit case Hermann Hospital v. MEBA Medical Benefits Plan, which interpreted an anti-assignment clause as applying "only to unrelated, third-party assignees - other than the health care provider of assigned benefits - such as creditors who might attempt to obtain voluntary assignments

to cover debts having no nexus with the Plan or its benefits, or even involuntary alienations such as attempting to garnish payments for plan benefits." 959 F.2d 569, 575 (5th Cir. 1992) (overruled on other grounds by Access Mediquip, L.L.C. v. UnitedHealthcare Ins. Co., 698 F.3d 229 (5th Cir. 2012) (en banc)). In Hermann, the health plan at issue contained an anti-assignment provision that stated:

> No employee, dependent or beneficiary shall have the right to assign, alienate, transfer, sell, hypothecate, mortgage, encumber, pledge, commute, or anticipate any benefit payment hereunder, and any such payment shall not be subject to any legal process to levy execution upon or attachment or garnishment proceedings against for the payment of any claims.

Id. at 574. Because the provision failed to specify as to whom a purported assignment would be rendered invalid, the court concluded the provision did not apply when the assignee was "the provider of the very services which the plan is maintained to furnish." Id. at 575. The court continued:

> Were we to conclude otherwise, health care providers such as Hermann, which is entitled to payment for the services it provided as benefits covered under the Plan, would be unable to recover for those services unless [a beneficiary] were to sue MEBA for recovery of benefits and Hermann in turn sue [the beneficiary]. Such a result would be inequitable as [the beneficiary], knowing that any recovery from MEBA would immediately go to Hermann, would have no incentive to pursue payment – and might be

> reluctant to sue the Plan maintained by his
> own employer or his own union.

Id. at 575.

Here, the Court is likewise troubled that to construe the anti-assignment provision at issue as barring HLF's attempts to bring a civil claim pursuant to a purported assignment of rights would place members in the middle of a dispute between KFHP and HLF; indeed, both parties have consistently maintained that they wish to avoid such member involvement. Furthermore, consistent with what the Fifth Circuit alluded to in Hermann, the Court is concerned that barring such a suit would prevent this consolidated litigation from reaching the penultimate issue in this case: the proper payment for medical air transportation provided to Sidlo.

Nevertheless, Ninth Circuit precedent does not go so far as to invalidate any and all anti-assignment provisions as to medical providers, and in fact, Fifth Circuit precedent has clarified that Hermann does not "stand[] for the proposition that all anti-assignment clauses are per se invalid vis-à-vis providers of health care services." LeTourneau Lifelike Orthotics & Prosthetics, Inc. v. Wal-Mart Stores, Inc., 298 F.3d 348, 352 (5th Cir. 2002). In LeTourneau, the court was faced with an anti-assignment provision that stated:

> Medical coverage benefits of this Plan may
> not be assigned, transferred or in any way

> made over to another party by a participant.
> Nothing contained in the written description
> of Wal-Mart medical coverage shall be
> construed to make the Plan or Wal-Mart
> Stores, Inc., liable to *any third-party to
> whom a participant may be liable for medical
> care, treatment, or services.*

Id. at 349 (emphasis added).  There, the court noted that the

anti-assignment provision with which it was faced "[i]n no way

resembl[ed]" the provision in Hermann.  Id. at 351.  Rather, the

provision at issue was "unquestionably directed at providers of

health care services."  Id.  Accordingly, the court found the

anti-assignment provision did apply to health care providers and

deemed the purported assignment of benefits to the provider

void.  Id. at 352.

    Like the provision in LeTourneau, the anti-assignment

provision in Spinedex provided, "You may not assign your

Benefits under the Plan *to a non-Network provider* without our

consent."  Spinedex, 770 F.3d at 1296 (emphasis added).

Similarly, the subject anti-assignment provision in Brand

Tarzana included the proviso, "Where benefits are paid directly

to a doctor, hospital, or other provider of care . . . , such

direct payments are provided at the discretion of the Trustees

as a convenience to Plan participants and *do not imply an*

*enforceable assignment* of Welfare benefits or the right to

receive such benefits."  Brand Tarzana, 2016 WL 3480782, at *3

(emphasis added and alteration omitted).  The Court thus finds

wisdom in the Fifth Circuit's approach and notes that such
reasoning does not contradict this circuit's precedent.

Unlike the anti-assignment provisions discussed above,
the one at issue in the instant case contain no such language
specifically barring assignments to non-contracted providers
like HLF.  KFHP's various forms and plan documents, as well as
its method of interacting with providers like HLF, further
support the notion that the anti-assignment provision does not
apply to medical providers.

KFHP argues that the Member Handbook allows medical
providers to submit claims directly, receive direct payment, and
pursue appeals as authorized representatives of members.  Motion
at 6-7.  It asserts that "[t]hese terms show that interactions
with providers during the administrative process are permitted
by the Plans and do not waive the anti-assignment provision."
Id. at 7.  However, nowhere in the relevant portion of the
Member Handbook, nor in any of the other plan documents, is
there language clarifying that such activities do not serve to
waive the anti-assignment provision, similar to the plan
documents in Brand Tarzana.  Likewise, the anti-assignment
provision in Spinedex suggests that direct payment to a medical
provider will not waive the provision as to that provider.
Spinedex, 770 F.3d at 1296 ("You may not assign your Benefits
under the Plan to a non-Network provider without our consent.

The Claims Administrator may, however, in their discretion, pay a non-Network provider directly for services rendered to you.") (emphasis removed); see also Aviation West Charters, Inc. v. United Healthcare Ins. Co., No. CV-14-00338-PHX-NVW, 2014 WL 5814232, at *2 (D. Ariz. Nov. 10, 2014) (containing an anti-assignment provision stating, "You may not assign your Benefits under the Policy to a non-Network provider without our consent . . . . We may, however, in our discretion, pay a non-Network provider directly for services rendered to you."). Here, the language in the Member Handbook simply states, "If approved, reimbursement is made to providers according to [the member's] plan benefits." Ex. B to Decl. of Jan Kagehiro at 15. There is no additional language to clarify that such direct reimbursement does not constitute an assignment.

Additionally, as KFHP asserts, and HLF agrees, the Member Handbook anticipates that the health care provider can submit a claim form directly to KFHP. See id. If anything, the type of direct involvement between a medical provider and KFHP permitted by the Member Handbook suggests that an assignment of rights to a medical provider is permissible under the plans. Again, this idea finds support in the fact that missing from the Member Handbook or other plan documents is any language clarifying that such activities are encompassed by the anti-assignment provision. Apart from this absence of more specific

language in the anti-assignment provision or plan documents,
there is further evidence that KFHP intended the anti-assignment
provision not to apply to a provider.

For example, KFHP's Administrative Services Agreement
with EMI directs EMI to "[v]erify the validity of assignments of
benefits by Members" when processing medical air transportation
claims.  Ex. 12 to Decl. of Andrew J. Lautenbach at 5.  KFHP
asserts that this agreement governs EMI's services for KFHP
nationally, and therefore that this provision does not
necessarily apply to the Hawaii Region or the ERISA plans at
issue.  Reply at 7.  While this agreement does appear to govern
all KFHP health plans for which EMI processes claims, at the
very least it reflects KFHP's stance that a member can assign
benefits related to a medical air transportation claim in
certain geographic regions, indicating that KFHP does not have
in place a blanket policy against assignments.

In fact, the language in Box 13 on the HICF 1500 form
seems to be the mechanism by which EMI verifies the validity of
such an assignment.[8]  Specifically, Box 13 states, "INSURED'S OR

---

[8] HLF filled out a HICF 1500 form for Sidlo's claim and checked
"YES" in Box 27, which states, "ACCEPT ASSIGNMENT?"  See
Opposition at 9; Ex. 10 to Decl. of Andrew J. Lautenbach.
However, EMI Vice President John Martella testified that Box 27
applies solely to claims made on behalf of Medicare
beneficiaries.  Ex. 11 to Decl. of Andrew J. Lautenbach at
44:10-46:3.  Thus, to the extent HLF and AMRG argue that this
(continued . . .)

AUTHORIZED PERSON'S SIGNATURE.  I authorize payment of medical benefits to the undersigned physician or supplier for services described below."  Ex. 10 to Decl. of Andrew J. Lautenbach.  The signature line in Box 13 for the HICF 1500 form submitted on behalf of Sidlo states, "SIGNATURE ON FILE."  Id.  Counsel for HLF deposed EMI Vice President John Martella on this point, and the following exchange took place:

> Q.  And it says, "Signature on file."  Is that indicating to EMI that the provider has a document that the patient has signed that authorizes direct payment?
>
> A.  Yes.
>
> Q.  And is that something that EMI is required to verify prior to making direct payment to the provider?
>
> A.  Not over and above what is already indicated on this form.
>
> Q.  Right.  So you are going to check to make sure that there is a representation on this form that such a document has been signed; correct?
>
> A.  Correct.
>
> Q.  But you are not going to go back to the provider and ask to see a copy of the document signed by the patient?
>
> A.  No.
>
> . . .

---

box supports their position that KFHP permits assignments by members such as Sidlo, who is not a Medicare beneficiary, HLF and AMRG appear to be incorrect.

Q.   [I]f you were to receive a 1500 form that was blank in Line 13 in Box 13, would you go back to the provider and ask them whether or not they held a right to receive direct payment or whether they could get a signature on Box 13?

. . .

A.   Yes.

Q.   So prior to making direct payment to a provider, EMI needs to see either a signature or a representation from the provider that they have a signature from the patient that authorizes that direct payment; correct?

A.   Correct.

Ex. 11 to Decl. of Andrew J. Lautenbach at 39:14-41:12, ECF No. 476-13.  KFHP emphasizes that the language in Box 13 simply states that the member "authorizes" payment of medical benefits to the provider, and that this does not indicate an assignment. Reply at 6.  While the Court ultimately does not place much weight on the HICF 1500 form, EMI's practice of checking for a signature or confirming with the provider that it has a right to receive direct payment seems in keeping with its duty to verify assignments.

KFHP's conduct also indicates that the anti-assignment provision does not apply to medical providers such as HLF.  HLF argues that "Kaiser and EMI have worked directly with HLF on all issues related to processing the subject invoices.  HLF and

Kaiser exchanged information about patients, engaged in direct negotiations over payment amounts, and Kaiser partially paid numerous pending claims in the aggregate."  Defs.' CSF ¶ 53. KFHP's response is that the Member Handbook allows for these activities, and that such interaction with a provider cannot therefore waive the anti-assignment provision.  However, the bare statements in the Handbook stating, for example, "reimbursement is made to providers according to your health plan benefits," do not appear to contemplate the type of involved communication or negotiation that has taken place between KFHP and HLF, absent an assignment.

The Court is guided by the Fifth Circuit's reasoned approach to anti-assignment provisions, and finds that the evidence here supports that approach with respect to the anti-assignment provision at issue.  The Court thus concludes that KFHP's members may assign their rights under the health plans to medical providers that offer the very services for which the members have a right to benefits.  Moreover, the Court's takeaway in reviewing the various plan documents, the Administrative Services Agreement, the HICF 1500 form, and the parties' conduct is that the anti-assignment provision does not clearly apply to and is not enforceable against medical providers.  See Davidowitz, 946 F.2d at 1478 ("As a general rule

of law, where the parties' intent is clear, courts will enforce non-assignment provisions.").

        As a final matter, the Court addresses KFHP's argument that to the extent any rights have been assigned to HLF, HLF has received only a right to payment of benefits – not a right to bring suit under ERISA to recover such benefits.  See Reply at 8 ("Even if the cited language were relevant to the Plans, EMI's services for KFHP are limited to *claim administration*, so the term could not possibly be used to permit assignments outside of the initial claims process, such as administrative appeals and litigation.") (emphasis in original); id. at 6 n.6 ("Although KFHP believes the actions contemplated by the Member Handbook are not assignments, if the Court disagrees, KFHP has allowed these actions in writing in the Member Handbook, and has therefore satisfied the terms of the anti-assignment clause for a limited assignment.").  The Court disagrees with this logic.  As an assignee of Sidlo's right to benefits, HLF also has a right to sue for the denial of those benefits.  See Brand Tarzana, 2016 WL 3480782, at *8 ("[A] non-assignment clause limits who owns a claim and who can sue over its denial . . . .").

        For all the foregoing reasons, the Court DENIES KFHP's Motion for Summary Judgment.  Further, the Court GRANTS summary judgment on KFHP's Complaint in favor of HLF and AMRG pursuant

to Rule 56(f) and Local Rule 56.1(i).[9]  The Court specifically confines its grant of summary judgment in favor of HLF and AMRG to its holding that members may assign their rights under the health plans to their medical providers without violating the plans' anti-assignment provision.

## II.  Injunctive Relief

Because the Court finds that KFHP's plans' anti-assignment provision does not apply to assignments to health care providers, the Court denies KFHP's request for an injunction.

---

[9] Summary judgment in favor of HLF and AMRG is appropriate because KFHP had "reasonable notice that the sufficiency of [its] claim [would] be in issue," both because it had a full and fair opportunity to gather evidence supporting its own summary judgment motion and because HLF and AMRG requested summary judgment pursuant to Local Rule 56.1(i) in their Opposition. See Norse, 629 F.3d at 971; Albino, 747 F.3d at 1176.

Local Rule 56.1(i) requires the Court to provide a moving party with "oral or written notice and an opportunity to be heard" before granting summary judgment in favor of a nonmoving party.  The language in the local rule closely tracks its federal analogue, which requires the Court to "give[] notice and a reasonable time to respond" before granting summary judgment in favor of a nonmovant.  See Fed. R. Civ. P. 56(f).  Because the Ninth Circuit finds reasonable notice where a moving party has a "full opportunity" to gather evidence supporting its own motion for summary judgment, this Court will not read Local Rule 56.1(i) to impose any further obligations on the Court.  See Albino, 747 F.3d at 1176.

## CONCLUSION

For the foregoing reasons, the Court DENIES KFHP's Motion for Summary Judgment Against HLF and AMRG, and GRANTS summary judgment on KFHP's Complaint in favor of HLF and AMRG.

IT IS SO ORDERED.

DATED:   Honolulu, Hawai'i, November 17, 2016.



_____
Alan C. Kay
Sr. United States District Judge

Kaiser Foundation Health Plan, Inc. v. Hawaii Life Flight Corporation, et al., Civ. No. 16-00073 ACK-KSC, Order Denying Kaiser Foundation Health Plan Inc.'s Motion for Summary Judgment and Granting Summary Judgment in Favor of Hawaii Life Flight Corporation and Air Medical Resource Group Pursuant to Federal Rule of Civil Procedure 56(f) and Local Rule 56.1(i).