IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF HAWAII

_____

|  |  |
|---|---|
| TOBY SIDLO, on behalf of himself, and all others similarly situated, | ) ) ) |
| Plaintiff(s), | ) |
| vs. | ) Civ. No. 16-00073 ACK-KSC ) [CONSOLIDATED] |
| KAISER PERMANENTE INSURANCE COMPANY, a California non-profit corporation, KAISER FOUNDATION HEALTH PLAN, INC., a foreign non-profit corporation, and DOE DEFENDANTS 1-50, | ) ) ) ) ) ) |
| Defendants. | ) |
|_____| ) |
| KAISER FOUNDATION HEALTH PLAN, INC., a foreign non-profit corporation, | ) ) ) |
| Plaintiff, | ) |
| vs. | ) |
| HAWAII LIFE FLIGHT CORPORATION, a Hawaii corporation, and AIR MEDICAL RESOURCE GROUP, INC., a Utah Corporation, | ) ) ) ) |
| Defendants. | ) |
|_____| ) |
| HAWAII LIFE FLIGHT CORPORATION, a Hawaii corporation, | ) ) ) |
| Counterclaim Plaintiff, | ) |
| vs. | ) |
| KAISER FOUNDATION HEALTH PLAN, INC., a foreign non-profit corporation, | ) ) ) |

)
**Counterclaim Defendant.**  )
_____)

## ORDER GRANTING KAISER FOUNDATION HEALTH PLAN, INC.'S MOTION TO DISMISS HAWAII LIFE FLIGHT CORPORATION'S COUNTERCLAIM

For the reasons set forth below, the Court GRANTS Kaiser Foundation Health Plan, Inc.'s Motion to Dismiss Hawaii Life Flight Corporation's Counterclaim Against Kaiser Foundation Health Plan, Inc.  ECF No. 195.[1]

### PROCEDURAL BACKGROUND

The Court and the parties are familiar with the extensive factual and procedural history of this case, and the Court will not repeat it here except as necessary.

On February 18, 2016, Kaiser Foundation Health Plan, Inc. ("KFHP") filed a Complaint against Hawaii Life Flight Corporation ("HLF") and Air Medical Resource Group, Inc. ("AMRG").  KFHP's Compl. Against HLF and AMRG for Violation of 29 U.S.C. § 1132(a)(3) ("Complaint"), D. Haw., Civ. No. 16-00073 ACK-KSC, ECF No. 1.  KFHP's claim arises out of the events underlying and comprising consolidated lawsuit Sidlo v. Kaiser Permanente Insurance Company, et al., Civ. No. 15-00269 ACK-KSC. In its Complaint, KFHP alleges HLF and AMRG have violated and

_____

[1] Unless otherwise noted, all Electronic Case File ("ECF") citations refer to the civil docket for Sidlo v. Kaiser Permanente Insurance Company, et al., Civ. No. 15-00269 ACK-KSC, which has been consolidated with the instant action for purposes of discovery.  See Order Consolidating Cases, ECF No. 85.

attempted to violate an anti-assignment provision contained in KFHP's health plans within Hawaii, which are governed by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 et seq.  Complaint ¶¶ 49-56.  KFHP alleges that HLF and/or AMRG "have repeatedly attempted to procure broad assignments of members of the Plans' rights, interest, claims for money due, benefits and/or obligations under the Plans, in violation of the anti-assignment provision."  Id. ¶ 33.  More specifically, KFHP asserts that the Sidlo litigation has been brought by HLF and/or AMRG in Sidlo's name, which constitutes a violation of the anti-assignment provision.  Id. ¶ 35.

HLF and AMRG filed an Answer to the Complaint on April 14, 2016.  ECF No. 102.  That same day, HLF filed a Counterclaim against KFHP.  HLF's Countercl. Against KFHP ("Counterclaim"), ECF No. 103.  HLF's Counterclaim asserts four counts:  1) unfair competition in violation of Hawaii Revised Statutes ("HRS") § 480-2; 2) tortious interference with contract; 3) defamation; and 4) trade libel/disparagement.  Id. ¶¶ 23-49.  HLF asserts that KFHP, "in connection with its health insurance services, has made written and oral demands that hospitals arrange for emergency transportation of patients exclusively through or as designated by KFHP, even where those hospitals have contracts with HLF and contrary to the federal law that exclusively provides that emergency patient transport is arranged by the

treating physician." Id. ¶ 24.  Further, HLF contends that KFHP has sent letters to patients that received air ambulance services from HLF, which letters contain "numerous falsehoods, misrepresentations, and otherwise disparaging and defamatory statements" regarding HLF.  Id. ¶ 25.

On June 8, 2016, KFHP filed a Motion to Dismiss HLF's Counterclaim ("Motion").  ECF No. 195.  KFHP argues that HLF's claims are preempted by ERISA; are barred by the litigation privilege; and fail to state a claim upon which relief can be granted.  Id. at 1-2.  HLF filed a Memorandum in Opposition to KFHP's Motion on October 14, 2016 ("Opposition"), ECF No. 473; and KFHP filed a Reply in Support of KFHP's Motion ("Reply") on October 24, 2016, ECF No. 481.

The Court held a hearing regarding the Motion on November 7, 2016.

## FACTUAL BACKGROUND

KFHP serves as a claim fiduciary of certain group health plans within the State of Hawaii that are governed by ERISA.  Counterclaim ¶ 31; Complaint ¶¶ 3, 6.  Included in the health plan documents is a Hawaii Region Group Medical and Hospital Service Agreement ("Service Agreement"), which lists KFHP as "a fiduciary to review claims under [the] Service Agreement," and indicates that KFHP "has the authority to review claims and determine whether a Member is entitled to the

benefits of [the] Service Agreement."[2]  Service Agreement, Ex. A

to KFHP's Req. for Judicial Notice in Supp. of Mot. at KFHP

000004, ECF No. 196-2.  At all relevant times, Consolidated

Plaintiff Toby Sidlo and a group of proposed class members were

participants in or beneficiaries of these plans.[3]  FAC ¶¶ 3, 11.

---

[2] The Court takes judicial notice of KFHP's health plan
documents, including the Group Face Sheet, Service Agreement,
Kaiser Permanente Group Plan Benefit Schedule ("Benefit
Schedule), and various riders attached to KFHP's Request for
Judicial Notice in Support of Motion.  See ECF No 196.  The
Court also takes judicial notice of KFHP's Complaint.  See id.
Both the plan documents and KFHP's Complaint are alleged in the
Counterclaim and neither party disputes their authenticity; nor
has HLF objected to KFHP's request.  See Counterclaim ¶ 11
("[T]he claims [asserted in the Counterclaim] arise out of the
same transaction or occurrence that is the subject matter of
KFHP's complaint . . . ."); id. ¶ 31 ("KFHP, as the *health
insurance plan* fiduciary for the Patients, was at all times
aware of the contracts between the Patients and HLF.") (emphasis
added).

   Additionally, the Court takes judicial notice of
Consolidated Plaintiff Toby Sidlo's First Amended Class Action
Complaint ("FAC"), ECF No. 227, as well as the Court's summary
judgment order in the Sidlo litigation dated October 31, 2016,
ECF No. 487.  See United States v. Howard, 381 F.3d 873, 876 n.1
(9th Cir. 2004) (noting that a court may take judicial notice of
court records in another case).  Finally, the Court takes
judicial notice of the Joint Litigation Agreement ("JLA") signed
by HLF and Sidlo.  See ECF No. 325-31; see also Fed. R. Evid.
201(b)(2) (a court may take judicial notice of a fact that "can
be accurately and readily determined from sources whose accuracy
cannot reasonably be questioned").

[3] In consolidated case Sidlo v. Kaiser Permanente Insurance
Company, et al., Civ. No. 15-00269 ACK-KSC, KFHP member Sidlo
alleged that KFHP and Kaiser Permanente Insurance Company
("KPIC") violated ERISA by underpaying or under-reimbursing
claims for medical air transportation services provided to plan
participants or beneficiaries by HLF since 2013.  FAC ¶¶ 55-56.
On October 31, 2016, the Court issued an Order granting summary
                                        (continued . . . .)

HLF provides air ambulance services throughout the State of Hawaii, transporting patients via helicopter or fixed wing aircraft to hospitals and medical centers throughout the islands.  Counterclaim ¶¶ 1, 12.  HLF asserts that it is not a self-dispatching service; rather, pursuant to the Emergency Medical Treatment and Active Labor Act ("EMTALA"), 42 U.S.C. § 1395dd, attending physicians and hospitals dispatch HLF when an emergency arises.  Counterclaim ¶ 15.  The Centers for Medicare & Medicaid Services ("CMS") have issued interpretive guidelines for EMTALA, which state, "It is the treating physician at the transferring hospital who decides how the individual is transported to the recipient hospital and what transport service will be used, since this physician has assessed the individual personally."[4]  See CMS, State Operations Manual, Appendix V, at 66, available at https://www.cms.gov/Regulations-and-Guidance/Guidance/Manuals/Downloads/som107ap_v_emerg.pdf.

---

judgment in favor of KFHP and KPIC on Counts I through V of Sidlo's First Amended Complaint, which alleged various claims arising under ERISA.  See ECF No. 487 at 77-78.  In its Order the Court also sua sponte dismissed without prejudice Sidlo's Count VI, which sought a determination that KFHP and KPIC were "liable for the full unpaid balances owed by each class member under the doctrine of equitable indemnification as well as all other indemnity requirements imposed by law."  Id.

[4] Pursuant to Federal Rule of Evidence 201(b)(2), the Court takes judicial notice of CMS's interpretive guidelines for EMTALA.

HLF contends that "[m]any Hawaii hospitals contract with HLF to provide air ambulance services because they and their physicians believe that the nature of HLF's services . . . best serve the medical needs of, and minimize[] risk to, their patients."  Counterclaim ¶ 20.  As a result, HLF asserts, these hospitals have entered into first call agreements with HLF, which require the hospitals to first call upon HLF to provide necessary air ambulance services in an emergency situation.  Id.

Subsequent to the hearing on KFHP's Motion, HLF, with the consent of KFHP, submitted to the Court three of the first call agreements it has with hospitals.  The first agreement is a "Right of First Refusal" contract that HLF entered into with Kona Community Hospital ("KCH") on the Big Island.  See Ex. 4 to HLF's Submission of Exs., ECF No. 505-4.  The agreement provides that HLF, "without charge to KCH, will transport, without regard for ability to pay, medically necessary patients from KCH to medical facilities in Hawaii, in accordance with physician's instructions."  Id.  In certain situations, such as when a patient requires specialty care not provided by HLF or HLF has a delayed estimated time of arrival, KCH may request transport from another provider.  Id.  The term of the agreement is five years, beginning November 1, 2012.  Id.  Thus, the agreement is still valid, expiring on October 31, 2017.

The second agreement is also a "Right of First Refusal" contract between HLF and Wilcox Memorial Hospital ("WMH"), a facility located on Kauai.  <u>See</u> Ex. 5 to HLF's Submission of Exs., ECF No. 505-5.  The agreement contains substantially similar provisions as the first agreement, and has a three year term beginning February 1, 2013.  <u>Id.</u>  This initial three year term has expired, but the agreement provides that it "shall automatically renew each year for one year periods."  <u>Id.</u>

The last agreement is entitled an "Agreement for Purchase of Goods and Services," entered into by HLF and Hilo Medical Center ("HMC") on the Big Island.  <u>See</u> Ex. 6 to HLF's Submission of Exs., ECF No. 505-6.  Under the contract, HLF agrees to keep a "base of operation" at the hospital in order to quickly transport "urgent and emergent patients."  <u>Id.</u>  The contract states that HLF "will serve as the preferred air transport service provider, so long as performance and quality indicators are met as determined by HMC Administration and Emergency Medical Staff."  <u>Id.</u>  It also requires HLF to provide a plan detailing the service it will provide, including "alternate patient transport options for [sic] (a) while the helicopter is in use and a second need arises, (b) when helicopter use is not practical due to the weight of the patient or the need for additional life support equipment during transport; or (c) when weather conditions preclude the use of

the helicopter." Id.  The agreement has a three year term beginning April 10, 2013, and provides that the agreement "may be renewed for subsequent renewal terms as agreed to by both parties through a written amendment." Id.  The initial three-year term has expired, and it is unclear at this point whether the parties agreed to renew the agreement.

HLF alleges that KFHP, "in connection with its health insurance services, has made written and oral demands that hospitals arrange for emergency transportation of patients exclusively through or as designated by KFHP, even where those hospitals have contracts with HLF and contrary to the federal law that exclusively provides that emergency patient transport is arranged by the treating physician." Id. ¶ 5.  HLF asserts that KFHP requires hospitals to utilize the air ambulance services of HLF's competitors, "who are aligned with, or otherwise have relationships with, KFHP." Id.

HLF, with the consent of KFHP, has also submitted to the Court two letters counsel for KFHP sent to Hawaii Health Systems Corporation ("HHSC") concerning KCH's use of HLF's air ambulance services.  According to the communications, KCH is a part of HHSC.  See Ex. 2 to HLF's Submission of Exs., ECF No. 505-2.  KCH is also the hospital with which HLF has a first call agreement set to expire on October 31, 2017.

The first communication is a cease and desist letter sent on March 19, 2015.  See id.  KFHP asserts that KCH's Dr. Richard McDowell "has not been permitting Kaiser hospital staff to coordinate the air ambulance transportation through Kaiser's first call air ambulance contractor, AMR; and has been directing ER staff at [KCH] to use [HLF] exclusively for air transport, over the requests and objections of Kaiser's hospital staff." Id.  The letter states that KCH, through Dr. McDowell's actions, is in breach of a contract between HHSC and Kaiser Foundation Hospitals, whereby HHSC is required to notify Kaiser when one of its members presents at a HHSC facility; cooperate with Kaiser on the transfers of its members; and provide services in a cost effective manner.  Id.  The letter also notes that Dr. McDowell's conduct is interfering with KFHP's first call agreement with American Medical Response ("AMR").  Id.

The letter also states that any EMTALA concerns do not apply, since the air ambulance transports with which KFHP is concerned involve patients who are in stable condition.  Id. The letter reads, "In such instances, we disagree that [KCH] or HHSC should dictate the mode of transportation, especially when Kaiser has medical and financial responsibility for the patient's post stabilization care."  Id.

In a follow-up communication sent to HHSC on July 15, 2015, counsel for KFHP writes:

> We recognize that there may be circumstances where the immediate transfer of an unstabilized patient is necessary and that a transfer by rotor vehicle may be medically necessary in the opinion of the treating physician. Your citation to EMTALA and the State Operations Manual addresses the requirements for transporting such unstabilized patients. Kaiser is not challenging that decision for unstabilized patients being transported by air ambulance from the KCH emergency department. However, the vast majority of Kaiser members at issue . . . do not involve unstabilized patients in an emergent condition . . . . Most of the cases in the last year have concerned stabilized Kaiser members who are being transferred for continuity of care of the patient at their Kaiser hospital. In these cases EMTALA does not apply.

Ex. 3 to HLF's Submission of Exs., ECF No. 505-3.

The letter reiterates that AMR is KFHP's first call provider and that KFHP is responsible for controlling the medical expenses of its members. Id. The letter closes stating:

> Regrettably, while Kaiser has tried to negotiate reasonable rates with HLF, HLF refuses to contract with Kaiser so long as Kaiser has a first call contract with AMR. HLF has pursued a business plan that seeks to exploit Kaiser members by use of contracts with unconscionable, undisclosed rates in circumstances where the members and their families are under duress. Your assistance in helping us to avoid such cases in the future would most certainly be appreciated.

Id.

HLF did not submit to the Court any communications from KFHP to either WMH or HMC, the two other hospitals with whom HLF has first call agreements that the Court has reviewed.

Finally, HLF contends that KFHP sent a form letter to certain of its members who received air ambulance services from HLF, which letters contain "numerous falsehoods and defamatory statements." Id. ¶¶ 6, 22. One such letter, dated May 4, 2015, was sent to Consolidated Plaintiff Sidlo in connection with a medical air transport he received from HLF. Id. ¶ 22; Ex. 1 to Counterclaim, ECF No. 103-2. The letter states that it was sent in response to HLF's attempts to request payment from Sidlo, and that it relates to a dispute between KFHP and HLF "over exorbitant and excessive billings for [HLF's] air ambulance transport services." Ex. 1 to Counterclaim. It asserts that KFHP informed HLF it is "illegal to pressure individual patients and their families," and that KFHP is "considering further legal steps to prevent HLF from contacting [members]," including offering to provide Sidlo with legal representation. Id. HLF argues that the letter implies to Sidlo that he should refuse to pay HLF for its services, and should instead direct HLF to the attorney retained by KFHP to represent members. Id.

KFHP's communications to hospitals and members form the basis of HLF's claims of unfair competition, tortious

interference with contract, defamation, and trade libel/disparagement.

## STANDARD

Federal Rule of Civil Procedure 12(b)(6) authorizes the Court to dismiss a complaint that fails "to state a claim upon which relief can be granted." The Court may dismiss a complaint either because it lacks a cognizable legal theory or because it lacks sufficient factual allegations to support a cognizable legal theory. Conservation Force v. Salazar, 646 F.3d 1240, 1242 (9th Cir. 2011).

On a Rule 12(b)(6) motion to dismiss, the Court accepts all well-pleaded factual allegations as true and construes them in the light most favorable to the nonmoving party. Sateriale v. R.J. Reynolds Tobacco Co., 697 F.3d 777, 783 (9th Cir. 2012). The Court may not dismiss a "complaint containing allegations that, if proven, present a winning case . . . no matter how unlikely such winning outcome may appear to the district court." Balderas v. Countrywide Bank, N.A., 664 F.3d 787, 791 (9th Cir. 2011).

Nonetheless, "conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss." Fayer v. Vaughn, 649 F.3d 1061, 1064 (9th Cir. 2011) (citations omitted). "[O]nly pleaded facts, as opposed to legal conclusions, are entitled to assumption of the truth." United

States v. Corinthian Colls., 655 F.3d 984, 991 (9th Cir. 2011).

A "formulaic recitation of the elements of a cause of action"

will not defeat a motion to dismiss.  Bell Atl. Corp. v.

Twombly, 550 U.S. 544, 555 (2007) (internal citations and

quotations omitted).  The complaint must contain sufficient

factual matter, accepted as true, to "state a claim to relief

that is plausible on its face." Ashcroft v. Iqbal, 556 U.S.

662, 678 (2009) (quoting Twombly, 550 U.S. at 570).  "The

plausibility standard . . . asks for more than a sheer

possibility that a defendant has acted unlawfully.  Where a

complaint pleads facts that are 'merely consistent with' a

defendant's liability, it 'stops short of the line between

possibility and plausibility of entitlement to relief.'"  Iqbal,

556 U.S. at 678 (quoting Twombly, 550 U.S. at 556-57) (some

quotation marks omitted).

        The Court may, but is not required to, "consider

certain materials — documents attached to the complaint,

documents incorporated by reference in the complaint, or matters

of judicial notice — without converting the motion to dismiss

into a motion for summary judgment." United States v. Ritchie,

342 F.3d 903, 908 (9th Cir. 2003); see Davis v. HSBC Bank

Nevada, N.A., 691 F.3d 1152, 1159-60 (9th Cir. 2012) (court not

required to incorporate documents by reference).  The Court may

also consider documents whose contents are alleged in a

complaint and whose authenticity is not questioned by any party. Davis, 691 F.3d at 1160. The Court need not accept as true allegations that contradict the complaint's exhibits, documents incorporated by reference, or matters properly subject to judicial notice. Lazy Y Ranch Ltd. v. Behrens, 546 F.3d 580, 588 (9th Cir. 2008); Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001).

A court should grant leave to amend "even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." Lopez v. Smith, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (citations omitted). Leave to amend "is properly denied . . . if amendment would be futile." Carrico v. City & Cty. of S.F., 656 F.3d 1002, 1008 (9th Cir. 2011).

**DISCUSSION**

**I. ERISA Preemption**

ERISA's preemption clause provides that ERISA "shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan." 29 U.S.C. § 1144(a). "There are two strands of ERISA Preemption: (1) 'express' preemption under ERISA § 514(a), 29 U.S.C. § 1144(a); and (2) preemption due to a 'conflict' with ERISA's exclusive remedial scheme set forth in [ERISA § 502(a),] 29 U.S.C. § 1132(a)." Fossen v. Blue Cross & Blue Shield of Mont., Inc.,

660 F.3d 1102, 1107 (9th Cir. 2011) (quoting Paulsen v. CNF Inc., 559 F.3d 1061, 1081 (9th Cir. 2009)) (alteration in original).  Both of these preemption provisions "defeat state-law causes of action on the merits." Id.  KFHP argues that HLF's counterclaims are expressly preempted by 29 U.S.C. § 1144(a).

The Supreme Court has observed on numerous occasions that "the express pre-emption provisions of ERISA are deliberately expansive." Pilot Life Ins. Co. v. Dedeaux, 481 U.S. 41, 45-46 (1987); see also Ingersoll-Rand Co. v. McClendon, 498 U.S. 133, 138 (1990) ("[ERISA's] pre-emption clause is conspicuous for its breadth.") (quoting FMC Corp. v. Holliday, 498 U.S. 52, 58 (1990)); Gobeille v. Liberty Mut. Ins. Co., 136 S. Ct. 936, 947 (2016) ("Section 1144 contains what may be the most expansive express pre-emption provision in any federal statute.") (Thomas, J., concurring).

"The key to § 514(a) is found in the words 'relate to.'  Congress used those words in their broad sense, rejecting more limited pre-emption language that would have made the clause 'applicable only to state laws relating to the specific subjects covered by ERISA.'" Ingersoll, 498 U.S. at 138 (quoting Shaw v. Delta Air Lines, Inc., 463 U.S. 85, 98 (1983)). The Supreme Court has said that "a law 'relates to' an employee benefit plan, in the normal sense of the phrase, if it has a

connection with or reference to such a plan." Shaw, 463 U.S. at 96-97; see also Ingersoll, 498 U.S. at 139 ("Under this 'broad common-sense meaning,' a state law may 'relate to' a benefit plan, and thereby be pre-empted, even if the law is not specifically designed to affect such plans, or the effect is only indirect."); Wise v. Verizon Commc'ns, Inc., 600 F.3d 1180, 1190, (9th Cir. 2010) ("[W]here 'the existence of [an ERISA] plan is a critical factor in establishing liability' under a state cause of action, the state law claim is preempted.") (quoting Ingersoll, 498 U.S. at 136).

In order to determine whether a common law claim has "reference to" an ERISA plan, "the focus is whether the claim is premised on the existence of an ERISA plan, and whether the existence of the plan is essential to the claim's survival." Oregon Teamster Emp'rs Trust v. Hillsboro Garbage Disposal, Inc., 800 F.3d 1151, 1155 (9th Cir. 2015) (quoting Providence Health Plan v. McDowell, 385 F.3d 1168, 1172 (9th Cir. 2004). In determining whether a claim has a "connection with" an ERISA plan, the Ninth Circuit uses a "relationship test . . . under which a state law claim is preempted when the claim bears on an ERISA-regulated relationship, e.g., the relationship between plan and plan member, between plan and employer, [or] between employer and employee." Paulsen, 559 F.3d at 1082; Oregon Teamster, 800 F.3d at 1156. More broadly, both the Supreme

Court and the Ninth Circuit have recognized that "[t]he basic thrust of the pre-emption clause . . . was to avoid a multiplicity of regulation in order to permit the nationally uniform administration of employee benefit plans." N.Y. State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co., 514 U.S. 645, 657 (1995); Paulsen, 559 F.3d at 1082.

Importantly, "pre-emption does not occur . . . if the state law has only a 'tenuous, remote, or peripheral' connection with covered plans, as is the case with many laws of general applicability." Operating Eng'rs Health & Welfare Trust Fund v. JWJ Contracting Co., 135 F.3d 671, 677 (9th Cir. 1998). "[T]he objective of Congress in crafting Section 1144(a) was not to provide ERISA administrators with blanket immunity from garden variety torts which only peripherally impact daily plan administration." Dishman v. UNUM Life Ins. Co. of Am., 269 F.3d 974, 984 (9th Cir. 2001).

The Ninth Circuit has recognized that the "relate to" language of ERISA's preemption provision "has been the source of great confusion and multiple and slightly differing analyses." Paulsen, 559 F.3d at 1081; see also Rutledge v. Seyfarth, Shaw, Fairweather & Geraldson, 201 F.3d 1212, 1216 (9th Cir. 2000), as amended by 208 F.3d 1170 (9th Cir. 2000) ("Developing a rule to identify whether ERISA preempts a given state law . . . has bedeviled the Supreme Court.") (emphasis omitted). In Dishman,

the court noted, "[W]e have formulated several different, though compatible, tests in an effort to follow the Supreme Court in fulfilling the statutory mandate of broad preemption without intruding upon state laws beyond the intention of Congress and the objectives of ERISA . . . . Our efforts, like the Supreme Court's, have not succeeded in making this inquiry a precise one." Dishman, 269 F.3d at 981 n.15.

### a. KFHP's Letters to Members

KFHP's purported communications to both patients and hospitals form the basis of HLF's Counterclaim.  KFHP argues that the claims to which these communications give rise are preempted because the communications were made in the course of administering its ERISA plans.  Motion at 10.  With respect to KFHP's alleged communications to patients, HLF argues that its Counterclaim does not depend on the existence of an ERISA plan, and that "the tortious interference and defamatory conduct alleged in the Counterclaim is actionable irrespective of whether KFHP were an ERISA plan administrator."  Opposition at 3.  HLF maintains that, consistent with circuit precedent, the existence of an ERISA plan is not enough to establish that preemption is warranted.  See id. at 7-12 (citing Dishman, 269 F.3d at 984 ("The fact that the conduct at issue allegedly occurred 'in the course of UNUM's administration of the plan' does not create a relationship sufficient to warrant

preemption."); and Rose v. HealthComp, Inc., No. 1:15-cv-00619-SAB, 2015 WL 4730173 (E.D. Cal. Aug. 10, 2015) (stating that while "Defendant would not have obtained Plaintiff's confidential medical information without the existence of the medical plan . . . the Ninth Circuit held this does not create a sufficient relationship to warrant preemption")).

On the other hand, KFHP argues that the communications involve an issue related to the payment of benefits, which is a matter central to its administration of the health plans and therefore subject to ERISA preemption. Reply at 3. Indeed, the Supreme Court has indicated that the payment of benefits is "a central matter of plan administration." Egelhoff v. Egelhoff ex rel. Breiner, 532 U.S. 141, 148 (2001); see also Gobeille, 136 S.Ct. at 955 (stating that laws which prescribe "how claims should be processed or paid" touch on "central matter[s] of plan administration") (Ginsburg, J., dissenting); Rose, 2015 WL 4730173, at *8 (finding no preemption where "Plaintiff's allegations do not relate to processing any claim for benefits").

Here, HLF's claims do not relate directly to the denial of benefits due under the plans. Instead, there is an intermediate step because HLF's claims arise out of communications from KFHP to its members, which were sent in the context of a dispute about the denial of benefits. Thus, as

KFHP asserts, "HLF's claims are [nevertheless] contingent upon the existence of the Plans and relate to KFHP's administration of the Plans and processing of claims."  See Motion at 13.  As can be discerned from the pleadings in both this action and the Sidlo litigation, the letter to Sidlo was sent in connection with a disagreement as to how KFHP was processing and paying Sidlo's claim for medical air transportation services, which implicates KFHP's interpretation of its ERISA plans.  The letter is therefore directly tied to KFHP's plan administration and processing of claims.

Furthermore, the letter appears to arise from KFHP's conduct as an ERISA fiduciary.  KFHP asserts, "In response to HLF's intrusion into the realm of Plan administration, KFHP (as a fiduciary and Plan administrator) needed to set the record straight and inform Members that HLF was providing them with inaccurate information based on HLF's incorrect interpretation of Plan documents."  Reply at 4.  Because KFHP sent this letter in its role as fiduciary, to the extent HLF's Counterclaim is based on this communication it appears to bear on the relationship between the plan and the member, which the Ninth Circuit has determined is a proper basis for preemption.  See Paulsen, 559 F.3d at 1082.

The correlation between HLF's Counterclaim and the Sidlo litigation is also telling.  In this action, HLF's claims

rest on the premise that HLF has a contract with KFHP members, under which members will pay the balance of the bill for their air ambulance services.  However, Sidlo and HLF, as a party to the JLA, sought this same balance from KFHP in the Sidlo litigation via an improper denial of benefits claim pursuant to 29 U.S.C. § 1132(a)(1)(b).  Furthermore, as KFHP points out, HLF's Counterclaim purports to "arise out of the same transaction or occurrence that is the subject matter of KFHP's complaint," which itself is brought pursuant to 29 U.S.C. § 1132(a)(3).  Reply at 3; see also Counterclaim ¶ 11.

Because KFHP's interpretation of its plans and administration and payment of members' claims bears directly on the letters KFHP sent its members, the Court holds that to the extent HLF's Counterclaim is based on those communications, it is preempted.

### b. KFHP's Communications with Hospitals

KFHP's communications with hospitals relate only to Count I, which alleges that "KFHP sent the Letters to disparage HLF unfairly with falsehoods and misrepresentations, to cause Patients to breach their agreements to pay HLF for air ambulance services, and to disrupt HLF's business operations and relationships with patients and hospitals."  Counterclaim ¶ 26. KFHP contends that "[h]ad there been no ERISA-governed benefits plans in place that were administered by KFHP, KFHP would not

have any reason to communicate with hospitals about services provided to Members under those Plans or with any individuals who were or are 'Members.'"  Motion at 13.  The Court agrees with HLF, however, that "KFHP's conduct in causing hospitals to breach their contracts with KFHP would be wrongful irrespective of whether any ERISA governed plan is involved."  See Opposition at 13.

In fact, neither of the communications the Court has reviewed specifies whether the patients to whom KFHP refers are members of an ERISA plan; indeed, there is no mention of an ERISA-governed plan at all.  Furthermore, the first letter, dated March 19, 2015, was sent several months before the Sidlo litigation began, and the second letter is dated July 15, 2015, which is the day Sidlo filed his lawsuit.  Thus, it is unclear whether these communications were sent in the context of an ongoing ERISA dispute related to a denial of benefits or as a result of KFHP's general dissatisfaction with HLF's increasing rates and "excessive billing practices."  See Complaint ¶¶ 23-26.  The second letter does state, "The air ambulance transportation of [KFHP] . . . members who have presented to and have been stabilized in the KCH emergency department is at the heart of the dispute with [HLF]."  Ex. 3 to HLF's Submission of Exs.  This is likely a reference to the dispute that formed the basis of the Sidlo litigation, which commenced the same day the

letter was sent.  However, on a motion to dismiss the Court must construe all inferences in favor of HLF, and thus concludes that these letters do not definitively pertain to KFHP's ERISA plans or members.

Separately, KFHP argues that, pursuant to the plan documents, it has the authority to "arrange[] and provide[] medical services directly rather than paying for medical services provided by others,"  Reply at 6 (quoting Service Agreement at KFHP 000004); as well as to determine "the most appropriate delivery or level of service" for medical care, id. (quoting Benefit Schedule, Ex. A to KFHP's Req. for Judicial Notice in Supp. of Mot. at KFHP 000025, ECF No. 196-2).  To the extent the plans do afford KFHP a say in the method or provider of medical services, EMTALA appears to limit this discretion. In fact, KFHP appears to recognize that EMTALA allows the hospital to direct the method of transportation in an emergency situation.  See Ex. 3 to HLF's Submission of Exs.  However, KFHP argues that EMTALA does not apply where a stabilized patient is concerned.  See id.  While KFHP stated in its first letter to HHSC that its directive to hospitals to seek preauthorization for medical air transportation did not implicate EMTALA, it did concede in its second letter to HHSC that EMTALA might bear upon some of the transports at issue.  See id. ("*Most* of the cases in the last year have concerned stabilized Kaiser members who are

being transferred for continuity of care of the patient at their Kaiser hospital.") (emphasis added).   Furthermore, as evidenced by its Counterclaim, HLF appears to have outstanding concerns regarding EMTALA.

As HLF notes, the CMS interpretive guidelines for EMTALA provide, "It is the treating physician at the transferring hospital who decides how the individual is transported to the recipient hospital and what transport service will be used, since this physician has assessed the individual personally."   See CMS, State Operations Manual, Appendix V, at 66.   Without knowing the circumstances surrounding the various patient transports at issue, it is impossible for the Court to determine at this juncture whether KFHP's conduct and communications violate EMTALA.   Further, the Court notes that a question may remain as to whether HLF's first call agreements with hospitals likewise violate EMTALA.   However, on a motion to dismiss HLF's unfair competition claim pursuant to a theory of ERISA preemption, the Court need not resolve these issues now.

For the foregoing reasons, the Court holds that to the extent HLF's claims arise out of KFHP's communications with members, those claims are preempted by ERISA.   Accordingly, the Court dismisses with prejudice Counts I, II, III, and IV, but only to the extent they are based upon KFHP's communications

with members and otherwise with leave to amend.[5]  See Somers v. Apple, Inc., 729 F.3d 953, 960 (9th Cir. 2013) ("Dismissal without leave to amend is proper if it is clear that the complaint could not be saved by amendment.") (alteration and citation omitted).

## II.  Unfair Competition Claim

The Court next determines whether HLF has properly stated a claim of unfair competition pursuant to HRS Chapter 480.[6]  In its Counterclaim, HLF asserts that "KFHP, in connection with its health insurance services, has made written and oral demands that hospitals arrange for emergency transportation of patients exclusively through or as designated by KFHP, even where those hospitals have contracts with HLF and contrary to the federal law that exclusively provides that emergency patient transport is arranged by the treating physician."  Counterclaim ¶ 24.  HLF alleges that these communications have disrupted

_____

[5] The Court notes that currently pending before Magistrate Judge Chang is HLF's Motion for Leave to File First Amended Counterclaim, for which a hearing has been scheduled on December 15, 2016.  See ECF No. 428.  HLF's proposed Amended Counterclaim attached to its motion adds additional allegations to Count II based on KFHP's communications with hospitals.

[6] KFHP's Motion asserts that the absolute and qualified privileges bar HLF's Counterclaim in its entirety.  Motion at 16-19.  However, as HLF notes, KFHP does not specifically argue that either of these privileges applies to KFHP's communications with hospitals, a point which KFHP does not dispute in its Reply.  See Opposition at 15; Reply at 10-12.

HLF's business operations and relationships with hospitals with which it has first call agreements, and constitute an unfair method of competition in violation of HRS Chapter 480.  Id. ¶ 26.  HLF also contends that KFHP's conduct "destroy[s] HLF's ability to compete against air ambulance service providers that are aligned with KFHP," and "has the effect of suppressing competition in the Hawaii air ambulance service marketplace." Id. ¶ 27.

In order to state a claim of unfair competition, a plaintiff must allege facts showing:  "(1) a violation of HRS chapter 480; (2) which causes an injury to the plaintiff's business or property; and (3) proof of the amount of damages." BlueEarth Biofuels, LLC v. Hawaiian Electric Co., 780 F. Supp. 2d 1061, 1074 (D. Haw. 2011) (quoting Davis v. Four Seasons Hotel Ltd., 122 Haw. 423, 435 (2010)).

KFHP first attacks HLF's claim on the basis that it has not identified the specific provision of Chapter 480 that KFHP's conduct allegedly violates.  Motion at 19-20.  HLF's Counterclaim alleges that KFHP's conduct has violated HRS § 480-2, which provides that "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are unlawful."  HRS § 480-2(a).  Because § 480-2 states that "[n]o person other than a consumer, the attorney general or the director of the office of consumer

protection may bring an action based upon unfair or deceptive

acts or practices declared unlawful by this section," HLF must

allege that KFHP engaged in an unfair method of competition.

HRS §§ 480-2(d)-(e); BlueEarth, 780 F. Supp. 2d at 1074.

The Hawaii Intermediate Court of Appeals has stated

that "[a] practice is unfair when it offends established public

policy and when the practice is immoral, unethical, oppressive,

unscrupulous or substantially injurious to consumers." Tokuhisa

v. Cutter Mgmt. Co., 122 Haw. 181 (Ct. App. 2009) (citation

omitted).  The Supreme Court of Hawaii has stated:

> It is impossible to frame definitions which
> embrace all unfair practices. There is no
> limit to human inventiveness in this field.
> Even if all known practices were
> specifically defined and prohibited, it
> would be at once necessary to begin over
> again.  If Congress were to adopt the method
> of definition, it would undertake an endless
> task.  It is also practically impossible to
> define unfair practices so that the
> definition will fit business of every sort
> in every part of this country.  Whether
> competition is unfair or not generally
> depends upon the surrounding circumstances
> of the particular case.  What is harmful
> under certain circumstances may be
> beneficial under different circumstances.

Haw. Med. Ass'n v. Haw. Med. Serv. Ass'n, Inc., 113 Haw. 77, 109

(2006) (citation omitted).  Perhaps for this reason, "Hawai'i

courts have indicated that the terms unfair and deceptive should

be interpreted broadly." Crilley v. Bank of Am., N.A., Civ. No.

12-00081 LEK-BMK, 2012 WL 1492413, at *13 (D. Haw. Apr. 26,

2012); see also Han v. Yang, 84 Haw. 162, 177 (Ct. App. 1997) (stating that HRS § 480-2 "outlaws unfair methods of competition . . . in sweeping terms") (citation omitted).

Despite the broad view Hawaii courts take with respect to unfair competition claims, the Court finds that HLF has not sufficiently pled a violation of HRS § 480-2.  The Counterclaim only vaguely alleges that "KFHP sent the Letters to disparage HLF unfairly with falsehoods and misrepresentations," and conclusorily states, "KFHP's actions in creating, drafting, and delivering the Letters offend established public policy, are immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers, and therefore constitute an unfair method of competition."  See Counterclaim ¶ 26.  It is unclear from the Counterclaim what false or misleading statements KFHP made in its communications with the hospitals, or indeed, if any were made at all; in fact, HLF only specifically alleges that false and misleading statements were made in the letters to members, but makes no reference to the same with regards to the hospital communications.

Similarly, it is unclear how exactly such a violation caused injury to HLF's business.  In order to establish the second element of an unfair competition claim, a party must sufficiently allege the "nature of the competition."  BlueEarth, 780 F. Supp. 2d at 1074.  Specifically, the party must "allege

how a defendant's conduct will negatively affect competition."

Id. (citation and internal quotation marks omitted).

Importantly, a party "need not be a competitor of or in

competition with" the party against whom it alleges a § 480-2

claim.  Four Seasons, 122 Haw. at 435.  Yet here, even when

viewing the Counterclaim in the light most favorable to HLF, the

Court finds that the Counterclaim fails to sufficiently allege

how KFHP's communications with hospitals have negatively

impacted HLF.  HLF conclusively asserts that KFHP's

communications were "designed to disrupt HLF's business

operations . . . and to impede or destroy HLF's ability to

compete against air ambulance service providers that are aligned

with KFHP."  Counterclaim ¶ 27.  It then concludes that "KFHP's

conduct . . . has the effect of suppressing competition in the

Hawaii air ambulance services marketplace."  Id.

        However, aside from its conclusory statement that

KFHP's conduct has disrupted HLF's business operations and

suppressed competition, the Counterclaim fails to allege with

any specificity the type of injury the subject communications

brought about, or in what way competition has been suppressed.

See Soule v. Hilton Worldwide, Inc., 1 F. Supp. 3d 1084, 1095

(D. Haw. 2014) ("Although Plaintiff alludes to the nature of the

competition, she fails to describe the nature of competition

with particularity and, additionally, to demonstrate that her

injuries 'stem from the negative effect on competition caused by the violation . . . .'") (citation omitted).  For example, the Counterclaim fails to allege what, if any, business HLF has lost from hospitals with which it has first call agreements as a result of KFHP's communications with the hospitals.

Finally, KFHP argues that HLF has failed to satisfy the third element of its § 480-2 claim - proof of the amount of damages – because it simply relies on "a bare legal conclusion that it has been damaged in an amount to be proven at trial." Motion at 22 (internal quotation marks omitted).  HLF counters that it has "numerously alleged throughout the Counterclaim that KFHP's conduct caused patients to breach their contracts with HLF, thus depriving HLF of the sums and amounts it is owed." Opposition at 21.  However, since the Court has dismissed the Counterclaim to the extent it relies on KFHP's communications with members, HLF is obligated to allege the damages it sustained as a result of KFHP's communications with hospitals, which the Counterclaim fails to do.

For all of the foregoing reasons, the Court concludes that HLF has failed to sufficiently plead the elements of an unfair competition claim arising from KFHP's communications with hospitals.

## CONCLUSION

For the foregoing reasons, the Court GRANTS KFHP's Motion to Dismiss HLF's Counterclaim.  Counts I, II, III, and IV are dismissed with prejudice, but only to the extent they are based upon KFHP's communications with members and otherwise with leave to amend.

IT IS SO ORDERED.

DATED:  Honolulu, Hawai'i, November 17, 2016.



_____
Alan C. Kay
Sr. United States District Judge

Kaiser Foundation Health Plan, Inc. v. Hawaii Life Flight Corporation, et al., Civ. No. 16-00073 ACK-KSC, Order Granting Kaiser Foundation Health Plan, Inc.'s Motion to Dismiss Hawaii Life Flight Corporation's Counterclaim.